FILED

2013 NOV -1  AM 11: 18

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1 | Eric H. Gibbs (SBN # 178658)
2 | Dylan Hughes (SBN # 209113)
   | Caitlyn D. Finley (SBN # 286242)
3 | **GIRARD GIBBS LLP**
4 | 601 California Street, 14th Floor
   | San Francisco, CA 94108
5 | Telephone:  (415) 981-4800
6 | Facsimile:   (415) 981-4846
   | Email:  ehg@girardgibbs.com
7 |

8 | [Additional Counsel Listed on Signature Page]

9 | *Attorneys for Plaintiffs*

10
11 |                    **UNITED STATES DISTRICT COURT**
12 |                    **CENTRAL DISTRICT OF CALIFORNIA**

13 | PETER VELASCO, CHRISTOPHER       Case No. **CV13-08080** -DDP
14 | WHITE, JACQUELINE YOUNG,                                        (VBK)
15 | and CHRISTOPHER LIGHT, on        **CLASS ACTION COMPLAINT**
   | behalf of themselves and all others
16 | similarly situated,
17 |                                  **DEMAND FOR JURY TRIAL**
18 |                 Plaintiffs,
   |        v.
19 |
20 | CHRYSLER GROUP LLC,
21 |                 Defendant.
22
23
24
25
26
27
28

                    CLASS ACTION COMPLAINT

1    Plaintiffs Peter Velasco, Christopher White, Jackie Young, and Christopher Light,

2  on behalf of themselves and all others similarly situated, allege as follows:

3                          **NATURE OF THE CASE**

4        1.     Plaintiffs and the Class members they propose to represent purchased or

5  leased 2008 model year Chrysler 300 and 2011-2012 model year Jeep Grand Cherokees,

6  Dodge Durangos, and Dodge Grand Caravans equipped with defective Totally Integrated

7  Power Modules, also known as TIPMs. The TIPM controls and distributes power to all of

8  the electrical functions of the vehicle, including the vehicle safety and ignition systems.

9  Vehicles equipped with defective TIPMs progress through a succession of symptoms that

10 begin with an inability to reliably start the vehicle and lead to, among other things, the

11 vehicle not starting, the fuel pump not turning off and the engine stalling while driving.

12       2.     The problem is so widespread that the part is on national backorder, taking

13 weeks and sometimes months for a replacement part to become available.   Chrysler

14 however, does not acknowledge the problem, leaving consumers, dealers and auto

15 technicians to sort it out themselves.  Consequently, consumers are stuck with inoperable

16 vehicles for weeks and months on end, forced to pay for unnecessary repairs and car

17 rental costs, and have to pay over $1,000 for the TIPM replacement not knowing whether

18 the replacement part suffers from the same defect.

19       3.     Plaintiffs therefore bring this action on behalf of a proposed nationwide class

20 of consumers who purchased or leased Chrysler vehicles equipped with the defective

21 TIPM, or, in the alternative, on behalf of statewide classes of consumers who purchased

22 or leased their Chrysler vehicles in California, Maryland, and Florida.

23                               **PARTIES**

24       4.     Plaintiff Peter Velasco is a citizen and resident of Harbor City located in the

25 City and County of Los Angeles, California.

26       5.     Plaintiff Christopher H. White is a citizen and resident of Odenton,

27 Maryland, located in the County of Anne Arundel.

28

CLASS ACTION COMPLAINT

6.    Plaintiff Jacqueline Young is a citizen and resident of Baltimore, Maryland, located in the County of Baltimore.

7.    Plaintiff Christopher Light is a citizen and resident of Palm Harbor, Florida, located in the County of Pinellas.

8.    Defendant Chrysler Group, L.L.C., (Chrysler) is a limited liability corporation organized under the laws of the State of Delaware, headquartered in Auburn Hills, Michigan, and has its principal place of business in Auburn Hills, Michigan. Chrysler is the U.S. subsidiary of Italian multinational automaker Fiat S.p.A.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Chrysler, on the other, are citizens of different states.

10.    This Court has jurisdiction over Chrysler because Chrysler is registered to conduct business in California and has sufficient minimum contacts in California; or otherwise intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles to render the exercise of jurisdiction by this Court proper and necessary.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

12.    Chrysler markets, distributes, and warrants automobiles in the United States sold under various brand names including the "Jeep", "Dodge", and "Chrysler" brands. This lawsuit concerns the 2008 model year Chrysler 300, and 2011- 2012 model year Jeep Grand Cherokees, Dodge Durangos and Dodge Grand Caravans (the "Class Vehicles").

CLASS ACTION COMPLAINT

13.    Class vehicles are factory equipped with a Totally Integrated Power Module which is located in the vehicle engine compartment.  The TIPM consists of a computer, relays, and fuses, and controls and distributes power to all of the vehicles' electrical systems.  These electrical systems include the vehicles' safety systems, security system, ignition system, electrical powertrain as well as the vehicles' comfort and convenience systems which include such components as the air bags, fuel pump, windshield wipers, headlights, turn signals, and power windows and doors.

14.    The TIPM installed in Class Vehicles fails to reliably control and distribute power to various vehicle electrical systems and component parts.  Typically, the defect manifests as an inability to reliably start the vehicle and progressively escalates to the vehicle failing to start all together and, in some instances, the vehicle stalling during operation.  Vehicle owners also have problems with the fuel pump not shutting off and random and uncontrollable activity of the horn, windshield wipers, alarm system, door locks, and airbags.

15.    Below are some examples of complaints lodged with the National Highway Traffic Safety Administration ("NHTSA") reflecting consumers' concerns about the safety risks of driving with a defective TIPM:

- TOTALLY INTEGRATED POWER MODULE IS GOING OUT ON MULTIPLE JEEP VEHICLES.  THE TIPM CONTROLS LIGHTS, HORNS, WIPERS, AIR BAGS, ETC. WHEN THE PART QUITS WORKING IT CAUSES MULTIPLE ISSUES WITH THE VEHICLE. THE VEHICLE WILL NOT START, WHICH CAN LEAVE THE OWNER STRANDED. THE WIPERS, HORN, ETC., JUST TURN ON, WHICH COULD CAUSE AN ACCIDENT. AND THE AIR BAGS MAY NOT DEPLOY IF IN AN ACCIDENT. THE TIPM IS ON NATIONAL BACK ORDER, WHICH MEANS WAITING WEEKS FOR REPAIR AND CHRYSLER IS REFUSING TO PAY FOR A RENTAL CAR FOR THE OWNER, AND WILL, THE REPLACEMENT LAST LONGER THAN THE ORIGINL? THE VEHICLE NEEDS TO BE RECALLED AND REPLACED.

- CAR WON'T STOP. TIPM FUSE EXPLODED. JEEP DEALER SAYS I WONT HAVE A CAR FOR 2 WEEKS AND JEEP WON'T COVER THIS MAIN STREAM ISSUE.  I FOUND 1200 COMPLAINTS ON THE SAME ISSUE.  WE WANT EXTENDED WARRANTY OR FULL RECALL ON ALL JEEP GRAND

CHEROKEES. 2011 AND 2012. PEOPLE CAN DIE IF THEIR CAR SHUTS OFF ON THE HIGHWAY. I WAS WARNED I CAN DIE IF I DRIVE THIS JEEP BY SHAVER JEEP IN THOUSAND OAKS, CA. TIPM NEEDS RECALL AND WILL END UP KILLING JEEP OWNERS.

- MY PROBLEM IS WITH MY TOTALLY INTEGRATED POWER MODULE (TIPM). IT IS FAULTY AND NEEDS REPLACED AND SO ARE 25,000 OTHER 2011 VEHCILES IN THE USA. PART IS ON BACKORDER AND THERE IS A BUSINESS PROBLEM WITH THE VENDOR. I AM FLAGGING THIS SITUATION AS A LIFE, HEALTH, AND SAFETY MATTER BECAUSE YOU HAVE ON FILE 5-2011 JEEP GRAND CHEROKEE ACCIDENTS WHERE THE AIR BAGS WERE WRITTEN UP IN THE POLICE REPORTS AS NOT DEPLOYING. THIS GOES RIGHT BACK TO THE TIPM WHICH IS THE BRAIN OF THE WHOLE VEHICLE. THE AIR BAGS ARE WIRED IN TO THE TOTALLY INTEGRATED POWER MODULE. THIS IS THE CASE WHERE YOU NEED TO CONNECT THE DOTS. THERE ARE THOUSANDS OF US OUT THERE THAT WON'T START BECAUSE WE NEED THE TIPM. WHAT ABOUT THE OTHER THOUSANDS OUT THERE THAT DIDN'T DEVELOP THE FAULT YET IN THE TIPM BUT IN THE EVENT OF AN ACCDIENT THE ODDS THAT THE AIR BAGS DON'T DEPLOY HAS BEEN GREATLY INCREASED. THIS CONSUMER/JEEP OWNER HAS NO FAITH AT ALL THAT MY BAGS WILL EVER DEPLOY WHEN NEEDED. WHEN MY JEEP IS RETURNED TO ME I AM IMMEDIATELY TRADING IT IN. NHSTA NEEDS TO FORCE CHRSYLER TO MAKE A RECALL; THEY WILL NEVER DO IT ON THEIR OWN.

16.     The defect is so widespread that replacement parts are on national backorder forcing consumers to wait weeks or months to have their TIPMs replaced.  In the meantime, Chrysler dealerships and auto technicians are advising many Class members not to drive their vehicles until the TIPM is replaced, due to safety risks.  The financial burden on consumers is reflected in several hundred complaints filed with NHTSA,  like this one below:

- I WOULD LIKE TO PLACE A FORMAL COMPLAINT AGAINST CHRYSLER GROUP, LLC. MY FAMILY ALONG WITH SEVERAL HUNDREDS, IF NOT THOUSANDS OF OTHER 2011 JEEP GRAND CHEROKEE OWNERS. THIS ISSUE IS AROUND THE TIPM DEVICE THAT SEEMS TO BE FAILING ON MY AND MANY CONSUMER'S VEHICLES DATING BACK TO THE EARLY PART OF 2013. THE PROBLEM IS THE DEALER, NOR THE CHRYSLER GROUP DOESN'T HAVE AN IDEA WHEN THIS PART WILL BE AVAILABLE LEAVING MANY OF US WITHOUT A CAR FOR AN UNDETERMINED AMOUNT OF TIME. THIS PART (TIPM) NEEDS TO BE PLACED ON OFFICIAL RECALL BY THE CORPORATION AND UNTIL IT ACTUALLY IS…. IT HAS PLACED UNDUE FINANCIAL

CLASS ACTION COMPLAINT

STRAIN ON MANY OF THE OWNERS OF THE JEEP. WE ARE EXPECTED
BY THE BANKS TO CONTINUE PAYING OUR CAR NOTE, ALONG WITH
INSURNACE. NOW CHRYSLER IS SAYING THAT WE MUST ALSO COME
OUT OF POCKET FOR RENTALS TO REPLACE THE VEHICLES WE HAVE
AND OR PAYING FOR UNTIL THEY RESOLVE THE ISSUE.  THIS IS NOT
RIGHT ON SO MANY LEVELS AND APPARENTLY THEY CAN GET
AWAY WITH THIS WITHOUT RECOURSE. IN CONCLUSION, JUST
ASKING THE JUSTICE DEPARTEMENT TO LOOK INTO THIS ISSUE AND
ASSIST US CONSUMERS BEING HELD HOSTAGE BY CHRYSLER
GROUP, LLC.

**Chrysler Refuses to Acknowledge the TIPM Defect**

17.     Chrysler has long been aware of the issues involving its Totally Integrated Power Modules.   In 2007, a defect in the TIPM forced Chrysler to recall 80,894 Jeep Wranglers and Dodge Nitro vehicles after an investigation by NHTSA.   Defective TIPMs in the vehicles contained a software glitch "that may allow the engine to stall under certain operating conditions.   This could cause a crash without warning."   Over 200 people lodged detailed complaints with NHTSA describing these engine stalls. This defect in the TIPM resulted in several crashes and injuries before Chrysler recalled the affected vehicles.

18.     Despite the fact that previously defective TIPMs resulted in several crashes and injuries, Chrysler remains silent as TIPM parts go on national backorder and thousands of complaints are lodged regarding ignition problems and stalling as a result of the defective TIPMs in Class Vehicles.

19.     Chrysler's refusal to publically acknowledge the defect has left Class members completely in the dark.  Chrysler's failure to notify consumers, dealerships, or auto technicians prevents the TIPM problem from being efficiently diagnosed. Consumers whose vehicles' TIPMs have not yet failed do not know to look out for early warning signs of the defect and auto technicians have trouble diagnosing the TIPM as the root cause.  As a result, many consumers are unaware they are driving unsafe and unreliable vehicles and are spending hundreds to thousands of dollars on unnecessary repairs on what appear to be dead batteries, faulty fuel pumps and wireless ignition node ("WIN") modules, and other issues that are actually caused by the defective TIPM.

CLASS ACTION COMPLAINT

1    Adding insult to injury, after consumers spend significant sums to replace the defective

2    TIPM, Chrysler does not make any reassurances that the replacement TIPM is not

3    similarly defective or that the vehicles' airbag system has not been affected.

4    **Plaintiff Peter Velasco's Experience**

5         20.    In March 2009, Plaintiff Velasco purchased a certified Pre-Owned 2008

6    Chrysler 300 with an extended warranty from the Cerritos Chrysler dealership in

7    Cerritos, California.  Mr.  Velasco's Chrysler 300 came with a factory-equipped TIPM.

8         21.    Mr. Velasco bought his 2008 Chrysler 300 because he needed a reliable

9    vehicle for his family. At the time Mr. Velasco bought the car he had one child and his

10   wife was pregnant.  He chose the Chrysler 300 because it was a large reliable vehicle that

11   could accommodate his growing family.  After his second child was born with a chronic

12   health condition, Mr. Velasco has relied on his Chrysler to take his daughter to and from

13   the children's hospital.

14        22.    Beginning in late 2010, Mr. Velasco began to experience electrical problems

15   with his vehicle.  On a few occasions while Mr. Velasco was driving his car the horn

16   would randomly go off, sometimes for thirty seconds up to a minute.  Unaware these

17   were symptoms of a larger issue with the vehicle's electrical system, Mr. Velasco and his

18   wife continued to drive himself and his family in his Chrysler 300.

19        23.    In early 2011, Mr. Velasco noticed that his radio would not turn on and the

20   lights in the vehicle dashboard would not light up.

21        24.    In August 2013, Mr. Velasco's car began stalling while he was driving. On

22   one occasion the car stalled while on a bridge while his wife was driving to work and it

23   took Mr. Velasco's wife several minutes to start the vehicle while it was stalled in the

24   middle of the road.  On another occasion, Mr. Velasco's car stalled on the freeway when

25   he was driving his wife and two children from his daughter's birthday party. Mr. Velasco

26   was driving approximately 65 miles per hour when his car's power shut off and the car

27   decelerated to a full stop in the middle of the freeway.  Mr. Velasco tried for several

28   minutes to restart the car until the car eventually turned back on.

CLASS ACTION COMPLAINT

25.     Concerned about the safety risks of continuing to drive the car, Mr. Velasco brought his Chrysler 300 to an independent mechanic to get a diagnosis in early October, 2013.  The mechanic kept Mr. Velasco's car for a week and a half while he made other repairs to the vehicle and attempted to diagnose the electrical problems. While the mechanic was test-driving Mr. Velasco's vehicle and the car stalled and would not restart.  The mechanic told Mr. Velasco he could not fix the car and that Mr. Velasco would have to contact a Chrysler dealership to deal with the stalling issue.   Mr. Velasco had AAA tow his car to the Scotts Robinson Chrysler dealership in Torrance, California.

26.     The Scotts Robinson Chrysler dealership ran a diagnostic test and determined Mr. Velasco's WIN module would need to be replaced.  The WIN, however, is on national backorder and the dealership and Chrysler corporate do not know when the part will be available.  According to the dealership, the part could take as long as a month and a half to come in.   Because the car died while the windows were rolled down Mr. Velasco was forced to seal the windows with tape and plastic to protect the inside of the vehicle from weather damage while it waits at the dealership.

27.     To date, Mr. Velasco's Chrysler is inoperable and remains at the Chrysler dealership waiting for a repair.  In the meantime, Chrysler would only provide Mr. Velasco with a 5-day replacement vehicle rental, forcing Mr. Velasco to pay for a rental car while he waits for the repair.   Mr. Velasco is unsure if the WIN module replacement will even address all his electrical problems as the TIPM defect is often times misdiagnosed.  Mr. Velasco is concerned that he is going to spend a significant amount of money to replace the WIN module and keyless remotes for his vehicle and then be forced to replace the vehicle's TIPM.

**Plaintiff Christopher White's Experience**

28.     In May 2011, Plaintiff White purchased a new 2011 Jeep Grand Cherokee from the Fred Frederick Chrysler dealership in Laurel, Maryland.  Mr. White's Jeep came with a factory-equipped TIPM.

CLASS ACTION COMPLAINT

29.     Mr. White purchased his 2011 Jeep Grand Cherokee because he needed a reliable vehicle for his job which required heavy commuting.

30.     With around 30,000 miles on his Jeep and still under warranty, Mr. White began experiencing numerous problems with his vehicle. Mr. White's vehicle began to have trouble starting and several times the car stalled while he was driving. On one occasion, Mr. White was driving on the highway at 70 miles per hour when the car stalled.   Concerned about the safety and reliability of his vehicle, Mr. White took his Jeep to a local repair shop.  The local repair performed a fuel flush on the vehicle and replaced the vehicle's spark plugs.

31.     Less than a year later, Mr. White began experiencing more problems with his vehicle.  Occasionally when Mr. White would unlock his car the horn and windshield wipers would activate.  Mr. White also continued to have trouble starting his car.  Mr. White took his vehicle in for a second time, this time to the Chrysler dealership, where the problem was diagnosed as the battery in the vehicle's keyless entry remote.  Mr. White paid to have the batteries replaced.

32.     Despite the battery replacement, Mr. White continued to have problems with starting the vehicle and stalling.  At this time, Mr. White noticed that the vehicle's fuel pump was not shutting off after he turned off the vehicle, draining the vehicle's battery. Concerned again with the safety and reliability of his vehicle, Mr. White returned to the local repair shop which diagnosed the problem as a faulty fuel pump.  Mr. White paid approximately $2,215.74 to have the fuel pump repaired and the battery replaced. Despite the repair Mr. White continued to experience problems with his ignition and stalling. The repair shop then diagnosed the problem as a faulty TIPM, but told Mr. White that TIPMs were on national backorder.  Mr. White's vehicle was transferred to a Chrysler dealership to wait for the new TIPM.

33.     Mr. White contacted Chrysler customer care but received very limited information.  Despite the fact that Mr. White's electrical problems began when his vehicle was still under warranty, Chrysler customer care told him that his vehicle was

1  now no longer under warranty and would have to pay out of pocket for the repair and any
2  rental cars.  Mr. White spent approximately $1095.35 on a rental car while he waited for
3  the repair.  No longer able to afford the high cost of the rental car, Mr. White was forced
4  to buy another car.

5      34.    On September 25, 2013, two months later, Mr. White's vehicle was finally
6  repaired.  Mr. White paid approximately $1,349.59 to have the TIPM fixed.   Mr. White
7  does not know if the new TIPM is an upgraded part or is similarly defective.   Mr. White
8  believes the value of his vehicle is diminished as result of the defective TIPM.

9      **Plaintiff Jacqueline Young's Experience**

10     35.    In January 2011, Plaintiff Young purchased a new 2011 Jeep Grand
11 Cherokee from the Thompson Chrysler dealership in Baltimore, Maryland.  Ms. Young's
12 vehicle came with the factory-installed TIPM.

13     36.    Ms. Young purchased her 2011 Jeep Grand Cherokee because she
14 considered Jeep trucks to be sturdy and reliable vehicles that would not leave her
15 stranded.  She bought her vehicle to commute to work and transport her family.  This was
16 Ms. Young's third Jeep vehicle.

17     37.    In July 2013, with a little more than 40,000 miles on her vehicle, Ms. Young
18 began having trouble starting her car.   On several occasions the ignition would make a
19 prolonged grinding noise and the car would have trouble starting.  Initially believing the
20 problem was with her electronic keyless entry remote, Ms. Young changed her keys.
21 Despite switching keys, the problem continued to progress with time, forcing Ms. Young
22 to spend more and more time getting her vehicle started, typically around 15 minutes
23 each time.

24     38.    Frustrated with the increasing difficulty of starting her vehicle, and
25 concerned that it would leave her and her family stranded, in early September 2013, Ms.
26 Young took her Jeep to the Thompson Chrysler dealership, in Baltimore, Maryland.   The
27 dealership told her that the TIPM in her Jeep needed to be replaced, and that the
28 replacement TIPM would cost her approximately $1,280.

CLASS ACTION COMPLAINT

39.     Ms. Young put down a $200.00 deposit for the new TIPM but the dealership could not tell her when it would be able to fix her car and told her that she was number 1,501 on a waiting list for a new TIPM.  When Ms. Young asked the dealership if it would provide her with a loaner vehicle while she waited she was told that Chrysler corporate did not have such a policy.  The dealership suggested she contact Chrysler directly.

40.     Ms. Young contacted Chrysler and initiated a claim to obtain an expedited TIPM and was told she would be called back.  Five days later, Ms. Young had not heard back from Chrysler, so she called back.  The customer service representative told Ms. Young that it was not Chrysler's policy to provide loaner-vehicles or rental cars. Needing her car to commute to and from work, Ms. Young rented a car for approximately $300.00 a week.  Ms. Young waited approximately three weeks for her car to be repaired and paid approximately $1,052.85 for a rental car.

41.     Ms. Young's vehicle was repaired for $1,036.30 and in total paid $2,089.15, together with rental car expenses, as a result of the defective TIPM.  Ms. Young does not know if the newly installed TIPM is an upgraded part or is similarly defective.

**Plaintiff Christopher Light's Experience**

42.     In November 2012, when his wife became pregnant with their third child, Mr. Light bought a used 2011 Dodge Grand Caravan, from the Kia dealership in Clearwater, Florida, to accommodate his growing family.  Mr. Light's Dodge Caravan came with a factory-installed TIPM.

43.     In February 2013, while out shopping one day with his pregnant wife and young children, Mr. Light returned to his vehicle to discover one of the van doors open and the keyless entry remote unresponsive.   Mr. Light then attempted to start the vehicle but the vehicle would not respond.   Mr. Light contacted AAA to have the vehicle towed and waited for an hour with his family in the parking lot for the tow truck to arrive.  The tow truck driver told Mr. Light he would not be able to give his children a ride home because his young children needed car seats.  A family friend came to pick up Mr.

1    Light's wife and small children as he had the car towed to his home. In the morning, Mr.

2    Light contacted AAA again to have his vehicle towed to the Fitzgerald's Countryside

3    Chrysler dealership.

4         44.    The dealership determined that the problem was with the vehicle's Wireless

5    Ignition Node or "WIN" module. Mr. Light paid a $250 deductible under his extended

6    warranty agreement to repair the WIN. The dealership told Mr. Light that he would be

7    reimbursed for his rental car during the time of the repair under extended warranty

8    agreement. Mr. Light, however, was only reimbursed for three of the five days of his

9    rental, because the extended warranty did not cover car rentals due to delayed or back

10   ordered parts and thus incurred an additional car rental expense of approximately

11   $200.00.   Since the repair to the WIN, Mr. Light continued to experience problems with

12   his van doors opening randomly on their own.

13        45.    Six months later, in early August 2013, Mr. Light's vehicle once again

14   failed to start, leaving his wife and young children stranded at home. Mr. Light took off

15   work to come home and deal with the car. Mr. Light contacted AAA and determined the

16   battery had died and paid approximately $125.00 dollars for a replacement. The day after

17   installing the new battery, Mr. Light's vehicle again would not start. Mr. Light had AAA

18   tow his vehicle to a car repair shop and paid approximately $45.00 for an electrical

19   diagnostic. The repair shop determined the problem was with the vehicle's fuel pump and

20   prepared a cost estimate to fix the problem.  Mr. Light's extended warranty would not

21   cover the estimate so Mr. Light contacted AAA to have the vehicle towed to Fitzgerald's

22   Countryside Chrysler dealership.

23        46.    The dealership told Mr. Light that the problem was not with the fuel pump

24   but rather with the TIPM, a part that is on national backorder. The dealership did not

25   know when a replacement TIPM would be available for Mr. Light's vehicle, and had

26   three other inoperable vehicles in their service department awaiting TIPM repairs. The

27   dealership told Mr. Light that it was lucky to receive even one TIPM per week. The

28   dealership provided Mr. Light with a loaner vehicle while he waited.

CLASS ACTION COMPLAINT

47. Frustrated there was no timeframe for the repair, Mr. Light contacted the Dayton Andrews Dodge dealership in Clearwater, Florida, and asked whether it had any TIPMs. The dealership told him that the part was on national backorder and because he was not a high priority customer it would likely take approximately two months.

48. On September 17, 2013, nearly a month later, the Fitzgerald's Countryside Chrysler dealership told Mr. Light that it still did not know when they would receive the new TIPM for his vehicle.

49. On September 20, 2013, the dealership notified Mr. Light that it had received the part and repaired his vehicle. Because the repair was unexpected, Mr. Light was forced to arrange a late payment of his rent in order to pay the $250.00 deductible under his extended warranty to repair the TIPM.

50. To date, Mr. Light has not received any reassurances that the new TIPM is not defective, and remains concerned that he will have to replace the TIPM again in the future.

**Chrysler Has Exclusive Knowledge of the TIPM Defect and Refuses to Recall Impacted Vehicles**

51. Chrysler has long known that it equipped Class Vehicles with defective TIPMs. Chrysler has exclusive access to information about the TIPM defect through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other sources of aggregate information about the problem. In contrast, the TIPM defect was not known or reasonably discoverable by the Plaintiffs and Class members prior to purchase and without experiencing the defect first hand and exposing themselves to an unreasonable safety risk.

52. Despite the pervasive failures of the TIPM in the Class Vehicles, Chrysler has not issued a recall, nor has Chrysler acknowledged that the TIPM is defective or notified current owners and lessees of the potential safety risks in operating a vehicle with a defective TIPM.

CLASS ACTION COMPLAINT

53.     Chrysler has not compensated consumers for the losses that have resulted from the defect nor has Chrysler made it clear to consumers forced to replace the TIPM whether the replacement is an upgraded part or just another defective TIPM.

54.     Chrysler knew that potential car buyers and lessees would deem the defect in the TIPM to be material such that reasonable consumers who knew of the defect either would have paid less for the Class Vehicles or would not have purchased or leased a Class Vehicle at all.

55.     As a result of Chrysler's practices, Plaintiffs and Class members purchased vehicles they otherwise would not have purchased, paid more for those vehicles than they would have paid, were subjected to an unreasonable risk to their safety, and paid, and will continue to pay, repair costs and out-of-pocket costs for alternative transportation as a result of the TIPM defect and the long waiting time for replacement parts.

56.     The TIPM defect has resulted in several thousand consumers incurring substantial expenses they could not and would not have expected to pay when they purchased the Class Vehicles, including the high cost of repair, the costs of making unnecessary repairs, and the additional expense of securing alternative transportation while waiting for the backordered TIPM.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action on behalf of themselves and a class of persons initially defined as follows:

> All persons in the United States who purchased or leased Class Vehicles installed with the TIPM, or, alternatively, all persons in California, Maryland, and Florida who purchased or leased Class Vehicles installed with the TIPM.

58.     Excluded from the Class are Chrysler and Chrysler Group, LLC; any affiliate, parent, or subsidiary of Chrysler or Chrysler Group, LLC; any entity in which Chrysler or Chrysler Group, LLC, has a controlling interest; any officer, director, or employee of Chrysler or Chrysler Group, LLC; any successor or assign Chrysler or

Chrysler Group, LLC; anyone employed by counsel for Plaintiffs in this action; any Judge to whom this case is assigned as well as his or her immediate family and staff; and anyone who purchased a Class Vehicle for the purpose of resale.

59. This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23.

60. <u>Numerosity</u>. Members of the Class are so numerous that their individual joinder herein is impracticable. Hundreds of thousands of Class Vehicles have been sold or leased in the United States. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

61. <u>Existence and predominance of common questions</u>. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common questions include the following:

      a.    Whether Class Vehicles suffer from the TIPM defect;

      b.    Whether the TIPM defect constitutes an unreasonable safety risk;

      c.    How long Chrysler has known of the defect;

      d.    Whether the defective nature of the TIPM constitutes a material fact;

      e.    Whether Chrysler has a duty to disclose the defective nature of the TIPM to Plaintiffs and the Class

      f.    Whether Chrysler has violated California's Consumers Legal Remedies Act, Civ. Code §1750, *et seq.*, as alleged in this complaint;

      g.    Whether Chrysler has engaged in unlawful, unfair, or fraudulent business practices in violation of Business and Professions Code § 17200 *et seq.*, as alleged in this complaint;

      h.    Whether Chrysler has violated the Maryland Consumer Protection Act, Md. Code Com. Law § 13-101, *et seq.*, as alleged in this complaint;

CLASS ACTION COMPLAINT

i.  Whether Chrysler has violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, as alleged in this complaint;

j.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction; and

k.  Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief.

62.  Typicality.  Plaintiffs' claims are typical of the claims of the Class, because, among other things, Plaintiffs purchased Class Vehicles, which contain the same defective TIPM found in all other Class Vehicles.

63.  Adequacy.  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

64.  Superiority.  The class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Chrysler economically feasible.  Even if Class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from the TIPM defect, individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides

the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

65.   In the alternative, the Class may be certified because:

a.   the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Chrysler;

b.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.   Chrysler has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

**FIRST CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**Cal. Civ. Code. §§ 1750, *et seq.*)**

66.   Plaintiff Velasco, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

67.   Chrysler is "person" within the meaning of Civil Code sections 1761(c) and 1770, and provided "goods" within the meaning of California Civil Code section 1761(b) and 1770.

68.   Plaintiff Velasco and members of the class are "consumers" within the meaning of Civil Code section 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code section 1761(e) and 1770.

69.   As set forth herein, Chrysler's acts and practices, undertaken in transactions intended to result and which did result in the sale or lease of Class Vehicles, violate Section 1770 of the  Consumers Legal Remedies Act in that: (a) Chrysler represents that

16

its goods have sponsorship, approval, characteristics, uses or benefits which they do not have; (b) Chrysler advertises its goods with intent not to sell them as advertised; (c) Chrysler represents that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and (d) Chrysler represents that its goods have been supplied in accordance with a previous representation when they have not.

70.     The acts and practices engaged in by Chrysler that violate the Consumers Legal Remedies Act include failing to disclose, at the point of sale or otherwise, that the TIPM is defective and poses a safety hazard.

71.     Had Chrysler adequately disclosed information about the headlight assembly defect, Plaintiff, Class members, and a reasonable consumer would not have purchased, and/or would have paid less for their Class Vehicles.

72.     Pursuant to the provision of California Civil Code § 1780, Plaintiff seeks an order enjoining Chrysler from the unlawful practices described herein, a declaration that Chrysler's conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

## SECOND CAUSE OF ACTION
### (For unlawful, unfair, and fraudulent business practices under Business and Professions Code § 17200 et seq.)

73.     Plaintiff Velasco, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

74.     Chrysler's acts and practices, as alleged in this complaint, constitute unlawful, unfair and/or fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.

75.     The business practices engaged in by Chrysler that violate the Unfair Competition Law include failing to disclose, at the point of sale or otherwise, that the TIPM is defective and poses a safety hazard.

76.     Chrysler engaged in unlawful business practices by violating the Consumers Legal Remedies Act, Civil Code sections 1750 et seq.

77.     Chrysler engaged in unfair business practices by, among other things:

78.   Engaging in conduct where the utility of that conduct is outweighed by the gravity of the consequences to Plaintiff and other members of the class;

79.   Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and other members of the class; and

80.   Engaging in conduct that undermines or violates the stated policies underlying the CLRA, which seeks to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

81.   Chrysler engaged in fraudulent business practices by engaging in conduct that was and is likely to deceive a reasonable consumer.

82.   As a direct and proximate result of Chrysler's unlawful, unfair and fraudulent business practices as alleged herein, Plaintiff Velasco and Class members have suffered injury in fact and lost money or property, in that they purchased Class Vehicles they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for TIPM diagnoses, repairs, and replacements, and rental cars, and are left with Class Vehicles of diminished value and utility because of the defect.  Meanwhile, Chrysler has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

83.   Plaintiff and Class members are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to Chrysler because of its unlawful, unfair and fraudulent, and deceptive practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Chrysler from its unlawful, unfair, fraudulent and deceitful activity.

### THIRD CAUSE OF ACTION
**(Violation of the Maryland Consumer Protection Act,
Md. Code Com. Law § 13-101, *et seq.* )**

84.   Plaintiffs White and Young, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth herein.

85.   Plaintiffs White and Young are "persons" within the meaning of the

18

Maryland Consumer Protection Act for all purposes therein.

86.   Chrysler is a "person" within the meaning of the Maryland Consumer Protection Act.

87.   All of the conduct alleged herein occurred in the course of Chrysler's business and is part of a pattern or generalized course of conduct.

88.   By failing to disclose, at the point of sale or otherwise, that the TIPM in Class Vehicles is defective and poses a safety hazard, Chrysler has violated the Maryland Consumer Protection Act.

89.   Plaintiffs White and Young and the Class were injured by Chrysler's conduct.   As a direct and proximate cause of Chrysler's unfair methods of competition and unfair and deceptive acts or practices, Plaintiffs White and Young and the Class have suffered actual economic losses.

90.   Pursuant to Md. Code Com. Law § 13-408, Plaintiffs White and Young and the other Class members make claims for damages and attorneys' fees.

### FOURTH CAUSE OF ACTION
**(Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat.  § 501.201, *et seq*.)**

91.   Plaintiff Light, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

92.   Plaintiff Light and the other Class members are "consumers" within the meaning of Fla. Stat. §501.203(7).

93.   At all relevant times, Chrysler was engaged in trade or commerce within the meaning of Fla. Stat.  §501.203(8).

94.    Chrysler's violation of Florida's Deceptive and Unfair Trade Practices Act includes, failing to disclose, at the point of sale or otherwise, that the TIPM in Class Vehicles is defective and poses a safety hazard.

95.   Pursuant to Fla.  Stat.  §501.211(1), Plaintiff Light and the other Class members seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Chrysler and for restitution and disgorgement.

CLASS ACTION COMPLAINT

96.     Pursuant to Fla. Stat. §501.211(2) and 501.2105, Plaintiff Light and the other Class members make claims for damages, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on Plaintiffs' own behalf and on behalf of the Class, pray for judgment as follows:

a.   For an order certifying the Plaintiff Class and appointing Plaintiffs and their counsel to represent the Class;

b.   For an order awarding Plaintiffs and the members of the Class damages, consequential damages, specific performance, and/or rescission;

c.   For an order awarding Plaintiffs and the members of the Class restitution, or other equitable relief as the Court deems proper;

d.   For an order enjoining Chrysler from continuing to engage in unlawful business practices as alleged herein;

e.   For an order awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest;

f.   For an order awarding Plaintiffs and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

g.   For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.


DATED: November 1, 2013                     Respectfully submitted,

                                            **GIRARD GIBBS LLP**

                                            By: _____

                                            Eric H. Gibbs
                                            Dylan Hughes
                                            Caitlyn D. Finley

CLASS ACTION COMPLAINT

601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
ehg@girardgibbs.com
dsh@girardgibbs.com
cdf@girardgibbs.com

Todd M. Schneider
Joshua G. Konecky
**SCHNEIDER WALLACE COTTRELL
KONECKY LLP**
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
jkonecky@schneiderwallace.com

*Attorneys for Plaintiffs*

21

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Dean D. Pregerson _____ and the assigned Magistrate Judge is _____ Victor B. Kenton _____ .

The case number on all documents filed with the Court should read as follows:

## 2:13-CV-8080-DDP (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ November 1, 2013 _____
Date

By  MDAVIS _____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[X] Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                 NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| PETER VELASCO, CHRISTOPHER WHITE, JACQUELINE YOUNG, and CHRISTOPHER LIGHT, on behalf of themselves and all others similarly situated, <br> _____ <br> *Plaintiff(s)* <br> v. <br> CHRYSLER GROUP LLC <br> _____ <br> *Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. **CV 13-08080-DDP (VBK)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Chrysler Group LLC
c/o C T Corporation
818 West Seventh Street
Los Angeles, California 90017


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Eric H. Gibbs
Dylan Hughes
Caitlyn D. Finley
GIRARD GIBBS, LLP
601 California Street, 14th Floor
San Francisco, California 94108

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


CLERK OF COURT

Date:  NOV - 1 2013     _____
MARILYN DAVIS
*Signature of Clerk or Deputy Clerk*



AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

PETER VELASCO, CHRISTOPHER WHITE, JACQUELINE YOUNG, and CHRISTOPHER LIGHT, on behalf of themselves and all others similarly situated.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

CHRYSLER GROUP LLC

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)
Girard Gibbs LLP
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C § 1332(d)

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accomodations | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: **CV13-08080**

CV-71 (09/13)                    CIVIL COVER SHEET                    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | **A PLAINTIFF?**<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | WESTERN DIVISION |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: November 1, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |