Mitchell N. Reinis CSB 36131
mreinis@thompsoncoburn.com
Rowena Santos CSB 210185
rsantos@thompsoncoburn.com
THOMPSON COBURN LLP
2029 Century Park East, 19th Floor
Los Angeles, California 90067
Tel: 310.282.2500 / Fax: 310.282.2501

Kathy A. Wisniewski (*pro hac vice*)
kwisniewski@thompsoncoburn.com
John W. Rogers (*pro hac vice*)
jrogers@thompsoncoburn.com
Stephen A. D'Aunoy (*pro hac vice*)
sdaunoy@thompsoncoburn.com
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO  63101
Tel: 314.552.6000/ Fax: 314.552.7000

Attorneys for Defendant
CHRYSLER GROUP LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PETER VELASCO, et. al,<br><br>     Plaintiffs,<br><br>v.<br><br>CHRYSLER GROUP LLC,<br><br>Defendant. | CASE NO. 2:13-CV-8080 DDP (VBKx)<br><br>Assigned to the Honorable<br>Dean D. Pregerson<br><br>**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>DATE:                    July 28, 2014<br>TIME:                    10:00 a.m.<br>COURTROOM:        3 |

---

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

II.  ALLEGED FACTS ................................................................................. 2

    A.    Plaintiffs' Alleged Vehicle Purchases And Repairs. ......................... 2

    B.    Plaintiffs' Allegations Of Defect .................................................... 4

    C.    The California Emission Warranty That Accompanied Plaintiffs' Vehicles. ...................................................................... 5

    D.    Plaintiffs' Claims, Proposed Classes, And Requested Relief. ............ 6

III.  ARGUMENT ........................................................................................ 7

    A.    The Law Governing Motions To Dismiss Under Rules 12(b)(6) And 9(b). ....................................................................... 7

    B.    Plaintiffs' Consumer Fraud Claims Fail For Multiple Reasons. ........ 8

        1.    Plaintiffs' Consumer Fraud Claims Do Not Satisfy Rule 9(b). ....................................................................... 8

        2.    Plaintiffs Have Not Adequately Alleged A Duty To Disclose Under Many Of The State Laws They Invoke. ......... 10

        3.    Plaintiffs Young's Maryland Consumer Protection Act Claim In Count IV Fails For An Additional Reason. ............. 13

    C.    The Magnuson-Moss Warranty Act Claim In Count VIII Fails For Multiple Reasons. .......................................................... 14

IV.  CONCLUSION ................................................................................... 16

i

1

# TABLE OF AUTHORITIES

2

3

**CASES**

4

Advisors Capital Investments, Inc. v. Cumberland Casualty
   & Surety Co., 2007 WL 220189 (M.D.Fla. 2007)...........................................10

5

Alban v. BMW of N. Am., 2011 WL 90014 (D.N.J. 2011).....................................13

6

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ...............................................................7, 8

7

Bell Atlantic v. Twombly, 550 U.S. 544 (2007).....................................................7, 8

8

Berenblat v. Apple, Inc., 2010 WL 1460297 (N.D.Cal. 2010) .................................9

9

Eisen v. Porches Cars N. Am., Inc., 2012 WL 841019 (C.D.Cal. 2012)....................9

10

Erickson v. Boston Scientific Corp.,
   846 F.Supp.2d 1085 (C.D.Cal. 2011) ..................................................................9

11

Gegeas v. Sherrill, 147 A.2d 223 (Md. 1958) ........................................................11

12

Glass v. BMW of N. Am., LLC, 2011 WL 6887721 (D.N.J. 2011) ....................9, 12

13

Green v. General Motors Corp., 2003 WL 21730592 (N.J.App. 2003) ...................12

14

Hairston v. South Beach Beverage Co., Inc.,
   2012 WL 1893818 (C.D.Cal. 2012).....................................................................14

15

16

Harvey v. Nissan North America, Inc.,
   2005 WL 1252341 (N.J. Super. 2005) .................................................................12

17

Hogan v. Maryland State Dental Ass'n, 843 A.2d 902 (Md.App. 2004) .................11

18

In re Access Cardiosystems, Inc., 404 B.R. 593 (D.Mass. 2009) ............................12

19

In re Google Phone Litig., 2012 WL 3155571 (N.D.Cal. 2012) ...............................8

20

In re Toshiba America HD DVD Marketing & Sales Prac. Litig.,
   2009 WL 2940081 (D.N.J. 2009).........................................................................8

21

22

Indus. General Corp. v. Sequoia Pacific Systems Corp.,
   44 F.3d 40 (1st Cir. 1995).....................................................................................12

23

Jovine v. Abbott Laboratories, Inc.,
   795 F.Supp.2d 1331 (S.D. Fla. 2011)....................................................................10

24

25

Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) ......................................8

26

Kent v. Hewlett-Packard Co., 2010 WL 2681767 (N.D.Cal. 2010).........................9

27

28

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

*Khaliki v. Helzberg Diamond Shops, Inc.,*
    2011 WL 1326660 (W.D.Mo. 2011) ........................................................... 8

*Latty v. St. Joseph's Society of the Sacred Heart, Inc.,*
    17 A.3d 155 (Md.App. 2011) ................................................................... 11

*Lightning Lube v. Witco Corp.,* 4 F.3d 1153 (3d Cir. 1993) ..................................... 12

*Llado-Carreno v. Guidant Corp.,* 2011 WL 705403 (S.D. Fla. 2011) ........................ 8

*Marolda v. Symantec Corp.,* 672 F.Supp.2d 992 (N.D.Cal. 2009) ........................... 9

*Martin v. Mead Johnson Nutrition Co.,*
    2010 WL 3928707 (D. Mass. 2010) ........................................................... 8

*Morris v. Osmose Wood Preserving,* 667 A.2d 624 (Md. 1995) ....................... 11, 13

*MRA Property Management, Inc. v. Armstrong,*
    43 A.3d 397 (Md. 2012) .......................................................................... 13

*Nei v. Boston Survey Consultants, Inc.,* 466 N.E.2d 681 (Mass. 1983)................... 12

*Perkins v. DaimlerChrysler Corp.,*
    383 N.J.Super 99, 890 A.2d 997 (App.Div. 2006) ......................................... 13

*Redding v. Ameriprise Auto & Home Ins.,*
    2012 WL 1268327 (D.Md. 2012) ............................................................... 11

*Rhee v. Highland Development Corp.,* 958 A.2d 385 (Md.App. 2008).................... 11

*Spaulding v. Wells Fargo Bank, N.A.,* 714 F.3d 769 (4th Cir. 2013) ........................ 8

*Tait v. BSH Home Appliances Corp.,*
    2011 WL 1832941 (C.D.Cal. 2011) ........................................................... 9

*Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.,* 2008
    WL 3200286 (M.D.Fla. 2008) .................................................................. 10

*United Jersey Bank v. Kensey,* 306 N.J. Super. 540 (App.Div. 1997).................... 12

*Vess v. Ciba-Geigy Corp., USA,* 317 F.3d 1097 (9th Cir. 2003)................................ 8

*Viggiano v. Hansen Natural Corp.,*  944 F.Supp. 877 (C.D.Cal. 2013) ................... 14

*Virgilio v. Ryland Group, Inc.,* 680 F.3d 1329 (11th Cir. 2012)............................. 10

## STATUTES AND OTHER AUTHORITIES

13 Cal. Code Regs § 2035........................................................................ 14, 15

15 U.S.C. § 2301 ....................................................................................... 6

15 U.S.C. § 2301(6) .................................................................................. 14

iii

Business and Professions Code § 17200 ............................................................ 6

Cal. Civ. Code § 1750............................................................................................ 6

Cal. Code Regs. § 2037 ...................................................................................... 14

Cal. Health & Safety Code § 43205 .................................................................. 14

Federal Rule of Civil Procedure 9(b) ............................................................. 8, 9

Federal Rule of Civil Procedure 12(b)(6).......................................................... 7

Fla. Stat. §501.201 ................................................................................................ 6

Md. Code Com. Law, § 13-101 ........................................................................... 6

Mo. Rev. Stat. § 407.010 ..................................................................................... 6

N.J. Stat. 56:8-1 ................................................................................................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, on July 28, 2014, at 10:00 a.m. in Courtroom 3 of the United States District Court for the Central District of California, located at 312 North Spring Street Los Angeles, California, Defendant Chrysler Group LLC will move under Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing Plaintiffs' Second Amended Complaint.

The Motion will be made on the grounds that the Second Amended Complaint fails to state a claim upon which relief can be granted because: (1) Plaintiffs fail to satisfy the heightened pleading requirements of Rule 9(b); (2) Plaintiffs Carter, Young, Soule, and Melville have failed to plead any facts showing that Chrysler Group had a duty to disclose any information to them; (3) Plaintiff Young failed to plead facts showing that Chrysler Group made a direct sale to her or that it played any role in the sales transactions at issue; and (4) the Magnuson-Moss Warranty Act claim brought by Plaintiffs Lightfoot, Young, Soule, and Melville fails because a state statute is not a "written warranty" under the Act and a Total Integrated Power Module is not a component covered by the California Emission Warranty issued by Chrysler Group.

The motion will be based upon this Notice of Motion and Motion to Dismiss, Chrysler Group LLC's Memorandum of Points and Authorities in Support of Motion to Dismiss, Chrysler Group LLC's Request for Judicial Notice and attached exhibit, the pleadings and record in this case, and any additional evidence and arguments that may be presented at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 12, 2014.

1

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

1    DATED:  May 28, 2014        Respectfully submitted,

2                                THOMPSON COBURN LLP

3

4                                By:  */s/ Rowena Santos*
                                      **MITCHELL N. REINIS**
5                                     **ROWENA SANTOS**
                                      **KATHY A. WISNIEWSKI**
6                                     **JOHN W. ROGERS**
                                      **STEPHEN A. D'AUNOY**
7                                     Attorneys for Defendant
8                                     CHRYSLER GROUP LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                     2

# I.  INTRODUCTION

This case — which was filed only 6 months ago — has already become a revolving door for named plaintiffs.  Out of the 4 originally named plaintiffs, only 1 remains today.  And, of the 7 named plaintiffs who were newly added to the First Amended Complaint ("FAC"), only 4 remain.  In other words, 7 named Plaintiffs have already abandoned their claims in this case.  And, they have done so for very good reasons.  Among the dropped plaintiffs are ones:  who purchased used vehicles and did not have a problem with them until they had been driven for tens of thousands of miles (Kendrick and Light); who had claims subject to arbitration (Ray); and who purchased vehicles for business purposes and thus lacked standing to pursue claims under consumer fraud laws (White).  The abandonment of so many named plaintiffs so early in this case highlights the lack of typicality amongst them, and the resulting inappropriateness of pursuing this case as a class action.

When this Court dismissed the FAC, it allowed Plaintiffs to file a Second Amended Complaint ("SAC").  In the newly-filed SAC Plaintiffs allege that Defendant Chrysler Group LLC equipped their vehicles (and a wide variety of other vehicles) with a defective Total Integrated Power Module ("TIPM").  The SAC:  (1) drops 4 Plaintiffs; (2) adds 3 new Plaintiffs;[1] (3) vastly expands the scope and number of proposed classes (making 8 separate classes of persons and 15 different models of vehicles manufactured over 5 model years);[2] (4) abandons 4 previously-pleaded causes of action;[3] and (5) adds 1 new cause of action.[4]  The SAC's reshuffling of the named Plaintiffs and the claims

---

[1]Plaintiffs' addition of these three parties without the permission of this Court violates Federal Rule of Civil Procedure 21.

[2]There are 48 different model/model-year vehicles encompassed in the proposed classes.  The named Plaintiffs own only 2 of these 48:  6 own a model-year 2011 Jeep Grand Cherokee; and 1 owns a model-year 2011 Dodge Durango.

[3] The dropped claims are:  breach of express warranty; breach of implied warranty; violation of the New Mexico Unfair Practices Act; and violation of the California Song-Beverly Consumer Warranty Act.

[4]The newly added claim is for violation of the Missouri Merchandising Practices Act.

1

they assert, however, does nothing to cure the many legal and pleading deficiencies previously noted by this Court.  Accordingly, the SAC should be dismissed.

## II.  ALLEGED FACTS

**A.    Plaintiffs' Alleged Vehicle Purchases And Repairs.**

**Marcos Galvan** — Plaintiff Galvan purchased a used 2011 Jeep Grand Cherokee from the Glen E. Thomas Dodge Chrysler Jeep dealership in Long Beach, California in November 2012.  *See* SAC, ¶ 49.  In April 2014, after his vehicle had been driven over 70,000 miles, Galvan had problems starting his vehicle so he took it to the Rydell Chrysler Dodge Jeep dealership for service.  Id. at ¶¶ 51-53.  The dealership determined that the problem was caused by the TIPM.  Id. at ¶ 53.  Galvin paid approximately $900 to have the TIPM replaced.  Id.

**Christopher Lightfoot** — Plaintiff Lightfoot purchased a new 2011 Jeep Grand Cherokee in January 2011 from the Walnut Creek Chrysler dealership in Walnut Creek, California.  Id. at ¶ 54.  In or around June 2013, Lightfoot had "sporadic" problems getting his Jeep to start.  Id. at ¶ 57.  In November 2013, after his vehicle had been driven 58,229 miles, Lightfoot could "rarely" start his Jeep so he took it to a dealership, which diagnosed the issue as a faulty TIPM.  Id. at ¶¶ 57-58.  The dealership repaired the TIPM at a cost of $526.90.  Id. at ¶ 58.

**Jimmy Pat Carter** — In October 2010, Plaintiff Carter purchased a new 2011 Jeep Grand Cherokee from the Hollywood Chrysler Jeep dealership in Hollywood, Florida.  Id. at ¶ 60.  In late 2013, Carter had to replace the battery in his Jeep on two different occasions.  Id. at ¶ 62.  In December 2013, after his Jeep had been driven for 77,900 miles, Carter could not get his Jeep to start so he had it towed to the Hollywood dealership.  Id. at ¶¶ 62, 64. The dealership told Carter that the problem was with the Jeep's TIPM and that the repair would cost approximately $1,200.  Id. at ¶ 62.  Carter called Chrysler Group to complain about the need for the TIPM repair, and, as a matter of goodwill, Chrysler Group agreed to pay for all but $100 of the repair.  Id. at ¶ 63.  On

1  December 23, 2013, the dealership replaced the TIPM in Carter's vehicle for a cost of

2  $100.  Id. at ¶ 64.

3       **Jacqueline Young** — In January 2011, Plaintiff Young purchased a new 2011

4  Jeep Grand Cherokee from the Thompson Chrysler dealership in Baltimore, Maryland.

5  Id. at ¶ 65.  In July 2013, after driving her vehicle for "more than 40,000 miles," the

6  ignition would occasionally make a "grinding noise" and the vehicle would have trouble

7  starting.  Id. at ¶ 67.  In September 2013, after having difficulty starting her vehicle,

8  Young took her vehicle to the Thompson dealership.  Id. at ¶ 68.  The dealership advised

9  her that the TIPM needed to be replaced.  Id.  Young paid $1,036.30 for the TIPM

10  repair.  Id. at ¶ 71.

11       **Bradford Soule** — In February 2013, Plaintiff Soule purchased a used 2011 Jeep

12  Grand Cherokee from a Chrysler dealership in Brockton, Massachusetts.  Id. at ¶ 72.

13  Five months later, Soule had trouble starting his Jeep, and he spent forty-five minutes

14  troubleshooting the ignition before he was finally able to get the vehicle to start.  Id. at

15  ¶ 74.  On August 17, 2013, at an unspecified mileage, Soule took his Jeep to the

16  dealership and told the service department that "he thought the issue may be with the

17  vehicle's TIPM."  Id. at ¶76.  Soule paid approximately $100 to have the dealership run

18  a diagnostic test and "reset" the vehicle's TIPM, but this did not fix the problem.  Id.

19  The dealership told Soule that he needed to replace the vehicle's TIPM.  Id.  On

20  September 3, 2013, after his vehicle had been driven 51,724 miles, Soule paid

21  approximately $635 to have the TIPM in his Jeep replaced.  Id. at ¶ 80.

22       **Elizabeth Dillon** — In March 2013, Plaintiff Dillon purchased a used 2011

23  Dodge Durango from the Spieler's Ram Chrysler Dodge Jeep dealership in California,

24  Missouri.  Id. at ¶ 82  Around September 2013, Dillon began having trouble starting her

25  Durango.  Id. at ¶ 84.  The Durango also "made noise" after it had been turned off, like

26  "something in the vehicle was still running."  Id.  In mid-November, Dillon was driving

27  her vehicle and it "suddenly shut off and stalled."  Id. at ¶ 85.  She put the vehicle into

28

park, started it, and drove home.  Id.  The next day she took her Durango to the
dealership, who told her that the TIPM needed a software update.  Id. at ¶¶ 85-86.
Dillon paid $57.29 to have the TIPM "flashed," but that did not alleviate the problems
starting her Durango.  Id. ¶ 86.  In late November 2013, after her Durango had been
driven 76,521 miles, Dillon returned to the dealership.  Id. at ¶ 87.  The dealership was
able to replicate her problems starting the vehicle, and ultimately diagnosed the problem
to be with the TIPM.  Id.  Dillon paid $985.92 for the repair.  Id.

**John Melville** — On September 30, 2010, Plaintiff Melville purchased a new
2011 Jeep Grand Cherokee from the Cherry Hill Chrysler dealership in New Jersey.  Id.
at ¶ 88.  In May or June 2013, after driving his vehicle approximately 48,000 miles,
Melville had trouble starting his Jeep on "several occasions."  Id. at ¶ 90.  Melville took
his vehicle to the dealership but it could find "nothing wrong."  Id. at ¶ 91.  Two months
later, at an unspecified mileage, Melville's Jeep would not start so he had it towed to the
Sea View Jeep dealership in Ocean Township, New Jersey.  Id. at ¶ 92.  The dealership
diagnosed the problem as a faulty fuel pump.  Id.  Melville did not believe the problem
was with the vehicle's fuel pump, so he took his vehicle to the Cherry Hill Chrysler
dealership.  Id.  The Cherry Hill Chrysler dealership diagnosed the problem as a faulty
TIPM.  Id. at ¶ 93.  On September 27, 2013, Melville paid a $100 deductible under an
extended warranty to have the TIPM replaced.  Id. at ¶¶ 59, 95.

**B.    Plaintiffs' Allegations Of Defect.**

Plaintiffs allege that the "TIPM consists of a computer, fuses, and internal relays
and is responsible for controlling and distributing electrical power to the entire vehicle—
everything from steering and brakes, to the alarm, headlights, and the fuel pump."  *See*
SAC, ¶ 1.  Plaintiffs claim that the TIPMs in their vehicles are "defective" and "fail[] to
reliably control and distribute power to various vehicle electrical systems and
component parts."  Id. at ¶ 22.  Although Plaintiffs repeatedly refer to their TIPMs as
"defective," they do not explain how their TIPMs are defective or what is wrong with

them.  Rather, Plaintiffs describe a number of symptoms that might occur.  They claim that their vehicles "fail to start promptly and reliably [or] fail to start entirely", "stall", "have fuel pumps that do not turn off", "experience headlights and taillights shutting off", and "experience random and uncontrollable activity of the horn, windshield wipers, and alarm system."  Id. at ¶ 23.  Despite their apparent inability to describe what causes these symptoms, many of which no Plaintiff has ever experienced, Plaintiffs allege that the defect exists in all of the following _**48**_ model/model years of vehicles:

- Model year 2011-2012 Jeep Grand Cherokee
- Model year 2011-2012 Dodge Durango
- Model year 2010-2014 Dodge Grand Caravan
- Model year 2010-2014 Chrysler Town & Country
- Model year 2010-2014 Chrysler Grand Voyager
- Model year 2012-2014 Dodge Ram Cargo Van
- Model year 2010-2012 Dodge Nitro
- Model year 2010-2012 Jeep Liberty
- Model year 2010-2012 Dodge Ram 1500 Pickup
- Model year 2010-2012 Dodge Ram 2500 Pickup
- Model year 2011-2012 Dodge Ram 3500 Cab Chassis
- Model year 2011-2013 Dodge Ram 4400/4500 Cab Chassis
- Model year 2010-2012 Dodge Ram 3500 Pickup
- Model year 2010-2014 Jeep Wrangler
- Model year 2010 Dodge Journey

**C.**     **The California Emission Warranty That Accompanied Plaintiffs' Vehicles.**

For vehicles certified for sale and registered in the States of California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New Mexico, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington, Chrysler Group issues a "California Emission Warranty."  *See* Request for Judicial Notice ("RJN"), Ex. A.  The

5

California Emission Warranty provides that if a vehicle fails a Smog Check inspection in the first 3 years or 50,000 miles, Chrysler Group will make repairs to ensure that the vehicle passes the inspection.  Id. at p. 2.  The California Emission Warranty also covers the repair or replacement of certain specified emission-related parts that are defective. Depending on the part, the coverage is either 3 years/50,000 miles, 7 years/70,000 miles, 8 years/80,000 miles, or 8 years/100,000 miles.  Id. at pp. 2-5.  A TIPM is not a specified emission-related part covered under the California Emission Warranty.  Id.

**D.     Plaintiffs' Claims, Proposed Classes, And Requested Relief.**

Plaintiffs assert eight causes of action:  (1) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. (brought by Plaintiffs Galvan and Lightfoot); (2) violation of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 et seq. (brought by Plaintiffs Galvan and Lightfoot); (3) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 et seq. (brought by Plaintiff Carter); (4) violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Com. Law, § 13-101 et seq. (brought by Plaintiff Young); (5) violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws, ch. 93A et seq. (brought by Plaintiff Soule); (6) violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq. (brought by Plaintiff Dillon); (7) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. 56:8-1 et seq. (brought by Plaintiff Melville); and (8) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (brought by Plaintiffs Lightfoot, Young, Soule, and Melville).  See SAC, ¶¶ 106-172.

Plaintiffs purport to bring their claims on behalf of eight separate classes of purchasers and lessees of 15 different models of vehicles spanning five model years who reside in 13 different states.  Specifically, Plaintiffs Galvan and Lightfoot propose to represent two separate classes which they define as "All persons who purchased or leased a Class Vehicle in California for personal, family or household use" and "All

6

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

persons who purchased or leased a Class Vehicle in California." Plaintiff Carter proposes to represent a class of "All persons who purchased or leased a Class Vehicle in Florida." Id. at ¶ 97. Plaintiff Young proposes to represent a class of "All persons who purchased or leased a Class Vehicle in Maryland primarily for personal, household, family, or agricultural purposes." Id. Plaintiff Soule proposes to represent a class of "All persons who purchased or leased a Class Vehicle in Massachusetts." Id. Plaintiff Dillon proposes to represent a class of "All persons who purchased or leased a Class Vehicle in Missouri." Id. Plaintiff Melville proposes to represent a class of "All persons who purchased or leased a Class Vehicle in New Jersey." Id. Finally, Plaintiffs Lightfoot, Young, Soule, and Melville propose to represent a class of "All persons who purchased or leased a Class Vehicle in California, Connecticut, Maine, Maryland, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont, or Washington that required a TIPM repair or replacement within seven years and seventh-thousand [sic] miles." Id. Each of these proposed classes include persons who no longer own or lease their vehicle, and seven of them include persons who never experienced any TIPM problem.

For relief, Plaintiffs seek: "actual, statutory, punitive or any other form of damages provided by and pursuant to the statutes"; "restitution, disgorgement or other equitable relief"; "an order requiring Chrysler to adequately disclose and repair the TIPM defect"; "an order enjoining Chrysler from incorporating the defective TIPM into its vehicles in the future"; "pre-judgment and post-judgment interest"; and "reasonable attorney fees and costs of suit, including expert witness fees". Id., "Prayer For Relief".

## III.  ARGUMENT

### A.    The Law Governing Motions To Dismiss Under Rules 12(b)(6) And 9(b).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

1   more than labels and conclusions, and a formulaic recitation of the elements of a cause

2   of action will not do." Twombly, 550 U.S. at 555 (citation omitted).  A court should not

3   accept as true conclusory legal allegations.  Iqbal, 566 U.S. at 678.

4        Claims which sound in fraud, including claims brought under consumer fraud

5   statutes like the CLRA and UCL, are subject to the heightened pleading requirements of

6   Federal Rule of Civil Procedure 9(b).  *See, e.g.,* Kearns v. Ford Motor Co., 567 F.3d

7   1120, 1125 (9th Cir. 2009).  This standard requires a party to plead with "particularity."

8   Id.  This means that any "[a]verments of fraud must be accompanied by the who, what,

9   when, where, and how of the misconduct charged."  Vess v. Ciba-Geigy Corp., USA,

10  317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotation marks omitted).

11  "The plaintiff must set forth what is false or misleading about a statement, and why it is

12  false." Id.

13  **B.    Plaintiffs' Consumer Fraud Claims Fail For Multiple Reasons.**

14       **1.    Plaintiffs' Consumer Fraud Claims Do Not Satisfy Rule 9(b).**

15       Under Rule 9(b), Plaintiffs are required to "state with particularity the

16  circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Plaintiffs' alleged

17  violations of various consumer protection statutes all sound in fraud, and the Ninth

18  Circuit has "specifically ruled that Rule 9(b)'s heightened pleading standards apply to

19  claims for violations" of such consumer protection statutes.  Kearns, 567 F.3d at 1125.

20  This is true regardless of whether such claims are based on affirmative statements or

21  fraudulent omissions.  Id. at 1127; *see also* In re Google Phone Litig., 2012 WL

22  3155571, *9 (N.D.Cal. 2012).[5]

23  _____

24       [5]Courts have likewise held that claims brought under the consumer protection acts
    of Maryland, New Jersey, Florida, Massachusetts, and Missouri are subject to the
    heightened pleading requirements of Rule 9(b).  *See, e.g.,* Spaulding v. Wells Fargo

25  Bank, N.A., 714 F.3d 769, 781 (4th Cir. 2013); In re Toshiba America HD DVD
    Marketing & Sales Prac. Litig., 2009 WL 2940081, *8 (D.N.J. 2009) (New Jersey);

26  Llado-Carreno v. Guidant Corp., 2011 WL 705403, *5 (S.D. Fla. 2011) (Florida);
    Martin v. Mead Johnson Nutrition Co., 2010 WL 3928707, *3 (D. Mass. 2010)

27  (Massachusetts); Khaliki v. Helzberg Diamond Shops, Inc., 2011 WL 1326660, *3
    (W.D.Mo. 2011) (Missouri).

28  _____

8

1    Plaintiffs do not allege that Chrysler Group made any affirmative

2    misrepresentations.  Rather, each of Plaintiffs' consumer fraud claims is based on

3    virtually identical allegations of an allegedly fraudulent omission:  that Chrysler Group

4    "fail[ed] to disclose, at the point of sale or otherwise, that the TIPM in Class Vehicles is

5    defective and poses a safety hazard."  *See* SAC, ¶¶ 124, 129, 136, 146; *see also* id. at

6    ¶¶ 108, 155.  In order to satisfy the specificity requirement of Rule 9(b) for a fraudulent

7    omission claim, a plaintiff "must describe the content of the omission and where the

8    omitted information should or could have been revealed as well as provide

9    representative samples of advertisements, offers, or other representations that plaintiff

10   relied on to make her purchase and that failed to include the allegedly omitted

11   information."  Eisen v. Porches Cars N. Am., Inc., 2012 WL 841019, *3 (C.D.Cal. 2012)

12   (*quoting* Marolda v. Symantec Corp., 672 F.Supp.2d 992, 1002 (N.D.Cal. 2009)); *see*

13   *also* Erickson v. Boston Scientific Corp., 846 F.Supp.2d 1085, 1093 (C.D.Cal. 2011).  A

14   plaintiff must also describe with particularity the facts showing how and why the

15   product is defective, how the defendant discovered the defect before the plaintiff's

16   purchase, the specific steps the defendant took to conceal the defect from the plaintiff

17   and other consumers, the plaintiff's reliance upon particular materials containing the

18   omission, and the basis for the defendant's affirmative duty to disclose the information.

19   Eisen, 2012 WL 841019 at *3; Tait v. BSH Home Appliances Corp., 2011 WL 1832941,

20   *3 (C.D.Cal. 2011); Kent v. Hewlett-Packard Co., 2010 WL 2681767, *12 (N.D.Cal.

21   2010); Berenblat v. Apple, Inc., 2010 WL 1460297, **8-9 (N.D.Cal. 2010); *see also*

22   Glass v. BMW of N. Am., LLC, 2011 WL 6887721, *8 (D.N.J. 2011).

23   Counts I through VII are devoid of the allegations necessary to meet the

24   heightened pleading requirements of Rule 9(b).  There is nothing in the SAC describing

25   precisely what information was withheld from Plaintiffs, where the omitted information

26   should (or could) have been revealed, or what advertisements, brochures, articles, or

27   promotional or other materials Plaintiffs actually read that may have disclosed the

28

9

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE**
**SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

1   withheld information.  Plaintiffs also do not plead sufficient facts showing that Chrysler
2   Group had an affirmative duty to disclose the alleged defect to consumers under most of
3   the state laws they invoke.  *See* infra.

4       Plaintiffs' failure to comply with Rule 9(b) requires dismissal of the consumer
5   fraud claims set forth in Counts I through VII.

6       **2.    Plaintiffs Have Not Adequately Alleged A Duty To Disclose Under**
7       **Many Of The State Laws They Invoke.**

8       *Count III (brought by Plaintiff Carter)*:  Omissions are not actionable as
9   fraudulent representations under Florida law unless the party omitting the information
10  owes a duty to disclose the information.  Taylor, Bean & Whitaker Mortg. Corp. v.
11  GMAC Mortg. Corp., 2008 WL 3200286 (M.D.Fla. 2008).  And, Florida law does not
12  automatically support a duty of disclosure for a FDUTPA claim.  Virgilio v. Ryland
13  Group, Inc., 680 F.3d 1329, 1338 (11th Cir. 2012) (dismissing Plaintiff's FDUTPA non-
14  disclosure claim because "the alleged duty of disclosure did not exist under Florida
15  law.").  In other words, simply selling a defective product is not a violation of the
16  FDUTPA.  *See, e.g.*, Jovine v. Abbott Laboratories, Inc., 795 F.Supp.2d 1331, 1342
17  (S.D. Fla. 2011) ("Plaintiff, however, does not explain how selling a defective product,
18  in and of itself, is a deceptive trade practice.  Ostensibly, it would not be a violation of
19  FDUTPA to sell a broken-down car or an inoperable computer provided the seller did
20  not misrepresent the items' qualities to the seller.").  For a defendant to owe a duty of
21  disclosure under Florida law, it must have "information that the other party has a right to
22  know because of a fiduciary or other relationship founded on trust and confidence
23  between them."  Advisors Capital Investments, Inc. v. Cumberland Casualty & Surety
24  Co., 2007 WL 220189, *3 (M.D.Fla. 2007).  No such relationship is alleged here.
25  Indeed, Chrysler Group was not even involved in the sale transaction at issue, as Carter
26  implicitly acknowledges when he offers nothing other than the conclusory allegation that
27  Chrysler Group failed to disclose that "the TIPM in Class Vehicles is defective and

28

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

1  poses a safety hazard." SAC, ¶ 124. Because Carter has failed to allege any supporting

2  facts supporting a duty to disclose, Count III should be dismissed.

3      *Count IV (brought by Plaintiff Young)*:  In Maryland, as elsewhere, there can be

4  no liability for failure to disclose "absent some duty to disclose." Morris v. Osmose

5  Wood Preserving, 667 A.2d 624, 638, fn. 12 (Md. 1995); *see also* Hogan v. Maryland

6  State Dental Ass'n, 843 A.2d 902, 908 (Md.App. 2004) ("Typically non-disclosure does

7  not constitute fraud unless a special duty to disclose exists"). Maryland courts have long

8  drawn a distinction between "concealment" and "non-disclosure," indicating that the

9  former requires some affirmative statement or conduct which prevents a person from

10 acquiring knowledge, while the latter is simply "a failure to reveal facts." Gegeas v.

11 Sherrill, 147 A.2d 223, 225 (Md. 1958); *see also* Redding v. Ameriprise Auto & Home

12 Ins., 2012 WL 1268327, *5 (D.Md. 2012). In the latter situation, a duty to disclose

13 arises only "in a few special types of transactions" such as insurance contracts and

14 fiduciary dealings. Gegeas, 147 A.2d at 225; *see also* Latty v. St. Joseph's Society of

15 the Sacred Heart, Inc., 17 A.3d 155, 165 (Md.App. 2011) ("A duty to disclose is

16 typically predicated on a confidential or fiduciary relationship between two parties").

17 Absent such "special" circumstances, "there is no duty upon a party to a transaction to

18 disclose facts to the other party." Gegeas, 147 A.2d at 225; Rhee v. Highland

19 Development Corp., 958 A.2d 385, 389-90 (Md.App. 2008).

20     Here, Young admits that Chrysler Group was not even "a party to [the]

21 transaction" underlying her claim as she purchased her vehicle from a different entity.

22 And, there are no allegations that Chrysler Group took any affirmative action in an effort

23 to impede Young's ability to discover the alleged defect; indeed, Young alleges only that

24 Chrysler Group had certain knowledge about a defect that it did not pass on to her. But,

25 there are no allegations supporting the existence of any fiduciary or confidential

26 relationship with Chrysler Group or that there was a "special" type of transaction giving

27 rise to a duty to disclose under Maryland law. Count IV must therefore be dismissed.

28

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

1    *Count V (brought by Plaintiff Soule)*:  Massachusetts imposes a duty of disclosure

2    only when there is a special relationship such a fiduciary relationship, or when an earlier

3    statement was misleading at the time it was made.  In re Access Cardiosystems, Inc., 404

4    B.R. 593, 643 (D.Mass. 2009) ("The Massachusetts Supreme Judicial Court has long

5    adhered to the 'rule of nonliability for bare nondisclosure").  A mere non-disclosure of

6    known information is insufficient to support a claim under Massachusetts Consumer

7    Fraud Act.  Nei v. Boston Survey Consultants, Inc., 466 N.E.2d 681, 683-84 (Mass.

8    1983); *see also* Indus. General Corp. v. Sequoia Pacific Systems Corp., 44 F.3d 40, 46

9    (1st Cir. 1995) (where no duty to disclose existed based on a fiduciary relationship, no

10   cause of action lies under Chapter 93A).  The SAC is devoid of facts  establishing that

11   Plaintiff Soule had any special relationship with Chrysler Group or that there was any

12   prior misleading statement made.  Count V should be dismissed.

13       *Count VII (brought by Plaintiff Melville)*:  Under New Jersey law, there is no

14   affirmative duty to disclose information unless there is a fiduciary or special relationship

15   between the parties.  United Jersey Bank v. Kensey, 306 N.J. Super. 540, 551 (App.Div.

16   1997); Lightning Lube v. Witco Corp., 4 F.3d 1153, 1185 (3d Cir. 1993).  Melville does

17   not plead any facts establishing that there was any fiduciary or special relationship

18   between him and Chrysler Group.  And, there was none.  *See, e.g.,* Green v. General

19   Motors Corp., 2003 WL 21730592, *8 (N.J.App. 2003) (dismissed NJCFA omission

20   claim holding that an automotive manufacturer has no special relationship or duty to

21   disclose safety-related design defect); Harvey v. Nissan North America, Inc., 2005 WL

22   1252341, *3 (N.J. Super. 2005) (finding automotive manufacturer has no duty to

23   disclose possible economic losses).  In fact, New Jersey law is clear:  "the failure of a

24   manufacture or seller to advise a purchaser that a part of a vehicle may breakdown or

25   require repair after the expiration of the warranty period cannot constitute a violation of

26   the NJCFA."  Glass, 2011 WL 5887721 at *9 (*quoting* Perkins v. DaimlerChrysler

27

28

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE**
**SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

1  Corp., 383 N.J.Super 99, 112, 890 A.2d 997 (App.Div. 2006)); *see also* Alban v. BMW
2  of N. Am., 2011 WL 90014 (D.N.J. 2011) (same).  Count VII must be dismissed.

3        **3.**     **Plaintiffs Young's Maryland Consumer Protection Act Claim In**
4                      **Count IV Fails For An Additional Reason.**

5        Young's MCPA omissions-based claim also fails because there are no allegations
6  that Chrysler Group made any direct sale to her or that it played any role in the sale
7  transaction to which she was a party (and it did not).  To be actionable under the MCPA,
8  the alleged wrongful conduct "must occur in the sale or offer for sale to the consumer."
9  Morris v. Osmose Wood Preserving, 667 A.2d 624, 635-37 (Md. 1995).  Only in
10 "limited circumstances" does liability under the MCPA extend to those who are not
11 direct sellers.  MRA Property Management, Inc. v. Armstrong, 43 A.3d 397, 412 (Md.
12 2012).  To impose MCPA liability on a person or entity who is not a direct seller, there
13 must be allegations that the non-seller committed a deceptive act that "so infect[ed] the
14 sale or offer for sale to a consumer that the law would deem the practice to have been
15 committed 'in' the sale or offer for sale."  Id. (*quoting* Morris, 667 A.2d at 635).

16       Here, Young pleaded no facts establishing that Chrysler Group was a direct seller
17 to her of any product (and it was not).  *See* SAC, ¶¶ 65-71.  Nor has Young set forth any
18 facts sufficient to support the notion that Chrysler Group made any affirmative
19 representations to her about the quality of her vehicle.  Id.  Moreover, the allegations of
20 the SAC do not support the notion that Chrysler Group's purported non-disclosure was
21 sufficient to fit within the "limited circumstances" for imposing liability against a non-
22 seller like Chrysler Group.  In fact, it is highly questionable whether the "so infect[ed]
23 the sale or offer" standard could ever be applied to a non-seller who is alleged to have
24 done nothing other than remain silent in the course of a transaction in which it does not
25 participate.  For this additional reason, Count IV should be dismissed.

26

27

28

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

**C.    The Magnuson-Moss Warranty Act Claim In Count VIII Fails For Multiple Reasons.**

In Count VIII, Plaintiffs Lightfoot, Young, Soule, and Melville allege that Chrysler Group violated the Magnuson-Moss Warranty Act ("MMWA").  *See* SAC, ¶¶ 158-172.  Plaintiffs' MMWA claim is premised on the notion that Chrysler Group breached a 7 year/70,000 miles "Emissions-Related Defects Warranty."  Id. at ¶ 162.  More specifically, Plaintiffs claim that a TIPM is a "'High Priced' emissions-related part" and is thus covered for 7 year/70,000 miles under Cal. Code Regs. § 2037 and the laws of those states that have adopted this provision, and that Chrysler Group breached this warranty by not providing a free repair during the warranty period.  Id. at ¶¶ 163-167.  Plaintiffs' MMWA claim fails as a matter of law for at least three reasons.

*First*, Plaintiffs' allegation that Cal. Health & Safety Code § 43205, 13 Cal. Code Regs § 2035 *et seq.*, and various other state statutes constitutes a "written warranty" under 15 U.S.C. § 2301(6) is incorrect.  *See* SAC, ¶ 162.  The MMWA expressly defines a "written warranty" as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product *by a supplier* to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period time.

15 U.S.C. § 2301(6)(A) (emphasis added).  Because a state statute is not a "written promise made … by a supplier" (id.) an alleged violation of the statute cannot be the basis of an MMWA claim.  *See, e.g.*, Viggiano v. Hansen Natural Corp.,  944 F.Supp. 877, 898 (C.D.Cal. 2013) (noting that "the MMWA narrowly defines the meaning of 'written warranty'" and dismissed MMWA claim because alleged warranty did not fit within the definition of "written warranty" under 15 U.S.C. § 2301(6)); Hairston v. South Beach Beverage Co., Inc., 2012 WL 1893818, *6 (C.D.Cal. 2012) (same).

1    *Second*, even if state statutes and regulations could constitute a "written warranty"

2    under the MMWA (which they cannot), Plaintiffs' MMWA claim still fails because a

3    TIPM is not an emissions-related part under Cal. Code Regs § 2035 *et seq.* Plaintiffs

4    seem to recognize this fact as the best that they can do is to aver that a TIPM "affects

5    emissions" because it "affects" or "controls" other actual "emission-related parts" (*e.g.,*

6    a fuel pump). *See* SAC, ¶ 163. But, utilizing Plaintiffs' logic, virtually every

7    component — even a battery and accelerator pedal — would be subject to the long-term

8    emissions warranty imposed by the statute because virtually all parts can be linked by

9    "six degrees of separation" (and probably less) to a another part that plays some role in

10   "affecting" or "controlling" an actual emissions-related part. For example, the battery

11   provides power to the catalytic converter (an emissions-related part), but that does not

12   make a battery covered under the California Emission Warranty. Under Plaintiffs'

13   reasoning, however, the battery (and virtually all parts) would be covered under the

14   California Emission Warranty simply because it "affects" an emissions-related part.

15   Indeed, Plaintiffs submitted to this Court the California Air Resources Board Emissions-

16   Related Part List and a TIPM is ***not*** listed as an emissions-related part that must be

17   covered under the statute and implementing regulations. *See* Plaintiffs' Request for

18   Judicial Notice Exhibit A filed on 3/20/14 (Doc. No. 34-1).

19   *Finally*, if there is any doubt that a TIPM is not an emissions-related part, one

20   only needs to look at the California Emission Warranty issued by Chrysler Group. In

21   2011, for vehicles sold in the States of California, Connecticut, Maine, Maryland,

22   Massachusetts, New Jersey, New Mexico, Oregon, Pennsylvania, Rhode Island,

23   Vermont, and Washington, Chrysler Group issued a "California Emission Warranty."

24   *See* RJN, Ex. A.[6] The California Emission Warranty specifically lists the emissions-

25

26   _____

27   [6] The four Plaintiffs that are bringing the MMWA claim all own a 2011 model-year Jeep Grand Cherokee. Thus, Chrysler Group is only submitting the California Emission Warranty that accompanied that vehicle.

28

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

related parts that are covered for 7 years/70,000 miles.  *See* id. at p. 4.  A TIPM is *not* listed as a covered part under that warranty.  Id.

Plaintiffs' MMWA claim should be dismissed.

## IV.  CONCLUSION

For the reasons outlined herein, Defendant Chrysler Group LLC respectfully requests that this Court dismiss Plaintiffs' Second Amended Complaint in its entirety.

DATED:  May 28, 2014                  Respectfully submitted,

**THOMPSON COBURN LLP**


By:  */s/ Rowena Santos*
     **MITCHELL N. REINIS**
     **ROWENA SANTOS**
     **KATHY A. WISNIEWSKI**
     **JOHN W. ROGERS**
     **STEPHEN A. D'AUNOY**
     Attorneys for Defendant
     CHRYSLER GROUP LLC

16

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 2029 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as:

**CHRYSLER GROUP LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

will be served or was served (a) on the judge in chambers in the form and manner required by Local Rules and (b) in the manner indicated below.

**☒      (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Rule(s), the foregoing document will be served by the Court via NEF and hyperlink to the document. On ***May 28, 2014***, I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated on the attached service list.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **May 28, 2014**, at Los Angeles, California.

| | |
|---|---|
| Michisha R. Jiles | /s/ *Michisha R. Jiles* |
| (Type or print name) | (Signature) |

17

**SERVICE LIST**

# SERVICE LIST

*Peter Velasco, et al. v. Chrysler Group LLC*
Case No. 2:13-CV-8080 DDP (VBKx)

Caitlyn D. Finley
Dylan S. Hughes
Eric H. Gibbs
David K. Stein
**Girard Gibbs LLP**
601 California Street 14th Floor
San Francisco, CA 94108
Telephone:   415-981-4800
Facsimile:   415-981-4846
Email:        cdf@girardgibbs.com
              dsh@girardgibbs.com
              ehg@girardgibbs.com
              ds@girardgibbs.com

Joshua G. Konecky
Todd M. Schneider
**Schneider Wallace Cottrell Konecky LLP**
180 Montgomery Street Suite 2000
San Francisco, CA 94104
Telephone:   415-421-7100
Facsimile:   415-421-7105
Email:        jkonecky@schneiderwallace.com
              tschneider@schneiderwallace.com

***Attorneys for Plaintiffs***

18

**SERVICE LIST**