Eric H. Gibbs (SBN 178658)
ehg@girardgibbs.com
David Stein (SBN 257465)
ds@girardgibbs.com
Scott M. Grzenczyk (SBN 279309)
smg@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone:   (415) 981-4800
Facsimile:    (415) 981-4846

Todd M. Schneider (SBN 158253)
tschneider@schneiderwallace.com
Joshua G. Konecky (SBN 1822897)
jkonecky@schneiderwallace.com
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER VELASCO, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CHRYSLER GROUP LLC,<br><br>                    Defendant. | Case No. 2:13-cv-08080-DDP (VBKx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO CHRYSLER GROUP LLC'S SECOND MOTION TO DISMISS**<br><br>Date:  July 28, 2014<br><br>Time: 10:00 a.m.<br><br>Judge: Honorable Dean D. Pregerson<br><br>Courtroom: 3 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................... 1

II.    BACKGROUND ...................................................................................... 2

III.   LEGAL STANDARD .............................................................................. 4

IV.   LAW AND ARGUMENT ........................................................................ 5

     A.    Plaintiffs' Allegations Satisfy Rule 9(b). ......................................... 5

     B.    Chrysler's Failure to Disclose the TIPM 7 Defect Violated Various States' Consumer Protection Statutes. ................................................... 8

          1.    Count III – Chrysler's Failure to Disclose the TIPM 7 Defect Violated the Florida Deceptive and Unfair Trade Practices Act. .......... 8

          2.    Count IV – Chrysler's Failure to Disclose the TIPM 7 Defect Violated the Maryland Consumer Protection Act. ............................ 10

          3.    Count V – Chrysler's Failure to Disclose the TIPM 7 Defect Violated the Massachusetts Consumer Protection Act. ...................... 11

          4.    Count VI – Chrysler's Failure to Disclose the TIPM 7 Defect Violated the New Jersey Consumer Fraud Act. .................................. 12

     C.    Plaintiff Young's Allegations Satisfy the Requirements of the Maryland Consumer Protection Act. .......................................................... 14

     D.    Plaintiffs Have Sufficiently Pled Chrysler's Breach of Emission Warranty in Violation of the Magnuson-Moss Warranty Act. ..................... 14

V.    CONCLUSION...................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Baggett v. Hewlett-Packard, Co.*
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................................ 5

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ...................................................................................... 4, 5

*CareerFairs.com v. United Business Media LLC*
    838 F. Supp. 2d 1316 (S.D. Fla. 2011) ............................................................ 9

*Cirulli v. Hyundai Motor Co.*
    No. SACV 08-0854, 2009 WL 5788762 (C.D. Cal. June 12, 2009) ................. 6

*Cousins v. Lockyer*
    568 F.3d 1063 (9th Cir. 2009) ......................................................................... 5

*Davis v. Powertel, Inc.*
    776 So.2d 971 (Fla.Dist.Ct.App.2000) ............................................................ 9

*Dewey v. Volkswagen AG*
    558 F. Supp. 2d 505 (D.N.J. 2008) ................................................................ 12

*Doll v. Ford Motor Co.*
    814 F. Supp. 2d 526 (D. Md. 2011) ......................................................... 10, 14

*Falco v. Nissan N. Am. Inc.*
    No. CV 13-00686, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ................... 5

*Fleisher v. Fiber Composites, LLC*
    No. 12-1326, 2012 WL 5381381 (E.D. Pa. Nov. 2, 2012) ............................ 11

*Gegeas v. Sherrill*
    147 A.2d 223 (Md. App. 1958) ..................................................................... 10

*Green v. General Motors Corp.*
    No. A-2831-01, 2003 WL 21730592 (N.J. App. Div. 2003) ......................... 13

*Harvey v. Nissan North America, Inc.*
    No. C-12016-04, 2005 WL 1252341 (N.J. Super. 2005) ............................... 13

2

*Henderson v. Volvo Cars of N. Am.*
    No. 09-4146, 2010 WL 2925913 (D.N.J. July 21, 2010) ................................ 11, 12

*In re Access Cardiosystems, Inc.*
    404 B.R. 593 (D. Mass. 2009) .................................................................. 12

*Indus. General Corp. v. Sequoia Pacific Sys. Corp.*
    44 F.3d 40 (1st Cir. 1995) ........................................................................ 12

*Latty v. St. Joseph's Society of the Sacred Heart, Inc.*
    17 A.3d 155 (Md. App. 2011) .................................................................. 10

*Lightning Lube v. Witco Corp.*
    4 F.3d 1153 (3d Cir. 1993) ....................................................................... 13

*Lloyd v. Gen. Motors Corp.*
    916 A.2d 257 (Md. App. 2007) ........................................................... 11, 14

*Maniscalco v. Brother Int'l Corp.*
    627 F. Supp. 2d 494 (D.N.J. 2009) .......................................................... 12

*Matthews v. Am. Honda Motor Co.*
    No. 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012) ............................ 9

*Morris v. ADT Sec. Servs.*
    580 F. Supp. 2d 1305 (S.D. Fla. 2008) ....................................................... 9

*Morris v. Osmose Wood Preserving*
    667 A.2d 624 (Md. 1995) ....................................................................... 14

*Nelson v. Nissan N. Am.*
    894 F. Supp. 2d 558 (D.N.J. 2012) ...................................................... 12, 13

*Perkins v. DaimlerChrysler Corp.*
    383 N.J. Super. 99 (App. Div. 2006) ........................................................ 13

*Perth Amboy Iron Works, Inc. v. American Home Assur. Co.*
    543 A.2d 1020 (N.J. Super. App. Div. 1988) ............................................. 12

*Price v. Kawasaki Motors Corp., USA*
    No. CV 10-01074, 2011 WL 10948588 (C.D. Cal. Jan. 24, 2011) ........................ 6

3

*Romano v. Motorola, Inc.*
   No. 07-CIV-60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) ........................ 8

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) ................................................................... 5

*Taylor, Bean & Whitaker Mortg. v. GMAC Mortg.*
   No. 5:05-CV-260, 2008 WL 3200286 (M.D. Fla. 2008) ........................................ 8

*United Jersey Bank v. Kensey*
   704 A.2d 38 (N.J. App. Div. 1997) ......................................................... 13

*V.S.H. Realty, Inc. v. Texaco, Inc.*
   757 F.2d 411 (1st Cir. 1985)............................................................ 11, 12

*Waldo v. Eli Lilly & Co.*
   No. CIV. S-13-0789, 2014 WL 130545 (E.D. Cal. Jan. 14, 2014) ........................ 5

**State Statutes**

13 Cal. Code Regs. § 2035............................................................... 14, 15, 17

13 Cal. Code Regs. § 2037............................................................... 15

310 Code Mass. Regs. § 7:40............................................................ 14

Md. Code. Regs. § 26:11:34............................................................. 14

N.J. Stat. Ann. § 56:8-2................................................................ 12

N.J.A.C. 7:27-29.1..................................................................... 14

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

# I.    **INTRODUCTION**

This proposed class action arises from an automotive defect that makes hundreds of thousands of Chrysler vehicles prone to stalling, headlight failure, and a number of other conditions that make them unsafe to drive.  For years, Chrysler has equipped its vehicles with a part called the totally integrated power module (or TIPM), which is supposed to control electrical function throughout the vehicle.  (¶¶ 1, 20, 21.)[1]  The TIPM has never worked as it should—Chrysler has issued safety recall after safety recall, dealt with countless driver complaints, and redesigned the part through at least seven "generations" before beginning to phase it out in recent years.  (¶¶ 28-33.)

This lawsuit focuses exclusively on the vehicles that Chrysler equipped with its "TIPM 7"—the seventh generation TIPM.  (¶ 19.)  The TIPM 7 defect has been apparent from the start; Chrysler began hearing complaints from concerned drivers as far back as 2008, yet continued selling vehicles with the TIPM 7 through 2014.  Chrysler stuck with the TIPM 7 for six additional years even though the TIPM 7 was failing at such high rates that the part spent most of that period on a nationwide backorder.  (¶¶ 25, 26, 34.)  Chrysler has several teams investigating the defect internally, (¶ 27), yet years later, their investigations remain ongoing with no end in sight.  Thus, while Chrysler's motion to dismiss complains about the breadth of this case—the number of vehicles involved and the number of drivers who have volunteered as named plaintiffs—the problem is one of Chrysler's own making.

Despite its never-ending investigation, the nationwide backorder, and numerous complaints from frightened drivers, to this day Chrysler has not warned drivers about the TIPM 7 defect or the dangers known to result from it.  Chrysler concealed the problem at the point of sale, never authorizing its dealerships to warn customers, and Chrysler has said in its discovery responses that it remains opposed to publicly acknowledging the

---

[1] All citations to "¶ _" are to Plaintiffs' Second Amended Class Action Complaint (Dkt. No. 39).

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

1    danger.  (¶¶ 41, 43, 48.)   Frustrated with Chrysler's silence and its refusal to help with

2    TIPM 7 repair costs, Plaintiffs from California, Florida, Maryland, Massachusetts,

3    Missouri, and New Jersey filed this suit.  (¶¶ 7-13.)  They allege that Chrysler's

4    concealment of the defect violated their states' consumer protection statutes and that

5    Chrysler breached its warranty obligations by failing to cover the cost of repairs.  (¶ 5.)

6    Because Plaintiffs have alleged all that is required to state claims for those violations,

7    Chrysler's motion should be denied in its entirety.

8    **II.   BACKGROUND**

9            The totally integrated power module (or TIPM) is responsible for controlling and

10   distributing electrical power to the entire vehicle—everything from steering and brakes,

11   to airbags, headlights, and the fuel pump.  (¶¶ 1, 21.)  The seventh generation TIPM, or

12   TIPM 7, came factory-installed in a number of Chrysler vehicles from 2007-2014.  (¶¶

13   33.)

14           Because the TIPM 7 controls electricity throughout the vehicle, the defect can

15   wreak havoc on many essential vehicle functions.  (¶¶ 2, 23-25.)  Vehicles often fail to

16   start, or take many tries before the engine turns over.  (¶¶ 2, 23, 25.)  When they do start,

17   the vehicles often stall, sometimes at high speeds.  (¶¶ 2, 4, 23, 25.)  And even when the

18   vehicles start up and then do not stall, they often experience headlight failure, taillight

19   failure, or unexpected activation of the horn, car alarm, and windshield wipers.  (¶¶ 2, 23,

20   25.)

21           Unfortunately, the TIPM 7 problems are as pervasive as they are dangerous.  The

22   defect affects three of Chrysler's most popular vehicles—the 2011-2012 Jeep Grand

23   Cherokee, Dodge Durango, and Dodge Grand Caravan.  (¶ 3.)  And the demand for TIPM

24   7 replacement parts has been so extreme that the part was on a nationwide backorder

25   between 2011 and 2014.  (¶¶ 26.)  Thus, when concerned drivers go to their dealer for

26   repairs, they have often been told that hundreds or thousands of people are ahead of them

27   in line, and it may be *months* before a replacement part is available.  (¶¶ 3, 25, 26.)  At

28   the same time, Chrysler's concealment of the TIPM 7 defect has caused widespread

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

confusion.  Drivers typically have no idea what is wrong with their vehicles when they experience these symptoms and, when they go to a Chrysler dealership for help, the dealers often cannot fix—or even diagnose—the problem on the first try.  (¶ 44.)  Even after the TIPM is identified as the culprit, repairs often exceed $1,000 (assuming a replacement part can be found).  (¶ 46.)

Each of the Plaintiffs has been injured by Chrysler's concealment of the defect. Each went to a Chrysler dealership and bought a vehicle with a factory-installed TIPM 7. (¶¶ 49, 54, 60, 72, 82, 88.)  Since buying their vehicles, each Plaintiff's vehicle has experienced TIPM 7 problems—ranging from stalling to fuel pumps that will not turn off even after the car is shut down.  (¶¶ 4, 51, 57, 62, 67, 74, 84.)  The Plaintiffs have all spent money—as much as $1,036.30—on TIPM 7 repairs, and none of the Plaintiffs would have bought their vehicle had Chrysler disclosed the defect initially.  (¶¶ 45, 53, 58, 64, 80, 87, 94.)

Unfortunately, the Plaintiffs' experiences are consistent with what other proposed class members have experienced.  Below are excerpts of just a few of the many complaints that TIPM 7 drivers have lodged with the National Highway Traffic Safety Administration:

- Same occurrence happened 4 times in 6 months, dealer was not able to diagnose the problem.  ***While driving on the [freeway] in the fast lane at night, the wipers go off washer fluid spraying, all  lights flashing, horn blaring, transmission disengaged from gas pedal***, after managing to pull over took key out of ignition and car was still running.  Managed to get car to the dealer next day and they said they cannot duplicate the problem.  I took my car home and again same incident. …. If anyone else had a TIPM problem their lives are at risk just as mine and my families was. The dealer finally got the part after 4 weeks, and so far I pray that my car is safe.

- The contact stated ***while driving 60 mph, the exterior lights suddenly failed***.  The contact used the fog lamps in order to see while driving at night. The contact took the vehicle to the dealer and the dealer stated that the TIPM module malfunctioned and needed to be replaced.

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

- ▪ ***Was driving about 40 mph when all electrical power failed no turn signals wipers radio brake lights power windows etc***.  Pulled over to side of road and when I turned off ignition all power came back on.  This is the second time this has occurred.  Also, having trouble with the ignition of this vehicle sometimes takes 2 or 3 tries to start.

- ▪ The Jeep was not drivable as starting it would take 20-30 minutes each time. …  The dealership advised that it was ok for me to continue driving the vehicle in the meantime despite the issue.  On the evening of August 16, ***while driving the vehicle at a speed of approximately 40 miles per hour, the engine stalled, causing the vehicle to lose all power near the intersection … I no longer feel safe operating the vehicle in its current condition***.

- ▪ My vehicle would not crank and stalls. …  After service evaluated my Jeep, I was told that the problem existed in the TIPM. This product is on at least a 6 week back order and that is not a guarantee. Also, there have been no recalls on this product. I have a busy commute to work in heavy traffic. ***My Jeep stalled on the interstate and I had to veer toward the ditch to avoid an accident***. If I were hit, would my airbags even deploy? This is a safety violation!

- ▪ It began when the car would crank and not start several times before actually starting.  I took it in (figuring at some point it would just not start at all and leave me stranded) and they said they couldn't duplicate it and sent me home. …  ***[T]he car died on me while I was driving it, with my small children in the car.  No power brakes, no power steering. I was able to pull over to the side of the road safely***.  Thankfully I was not going terribly fast and there were no other cars around.  I took it back in again, and they told me it needed a new TIPM.

(¶ 25 (emphasis supplied in each quote).)

## III.   **LEGAL STANDARD**

A motion to dismiss should be denied if the Court finds that Plaintiff pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard is not akin to a "probability requirement," but asks only whether the complaint "'raise[s] a reasonable expectation

4

1   that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d

2   1202, 1217 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).  When evaluating the

3   complaint, courts accept the complaint's allegations as true and construe them in the light

4   most favorable to plaintiffs.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

5   **IV.   LAW AND ARGUMENT**

6       **A.   Plaintiffs' Allegations Satisfy Rule 9(b).**

7           Chrysler's first argument for dismissal is that Plaintiffs' complaint lacks the detail

8   necessary to satisfy Rule 9(b)'s heightened pleading standard.  Although it is true that

9   Rule 9(b) applies, this Court and others have recognized that omissions claims "can

10  succeed without the same level of specificity required by a normal fraud claim." *Falco v.*

11  *Nissan N. Am. Inc.*, No. CV 13-00686 (DDP), 2013 WL 5575065, at *11 (C.D. Cal. Oct.

12  10, 2013) (quoting *Baggett v. Hewlett-Packard, Co.*, 582 F. Supp. 2d 1261, 1267 (C.D.

13  Cal. 2007)); *Waldo v. Eli Lilly & Co.*, No. CIV. S-13-0789, 2014 WL 130545, at *3, n.3

14  (E.D. Cal. Jan. 14, 2014). ("[P]laintiffs need not allege fraudulent concealment or

15  nondisclosure under Rule 9(b) with the level of specificity required to allege fraudulent

16  misrepresentation.").

17          Rather than acknowledge the lower burden for omission cases, Chrysler relies on

18  *Marolda v. Symantec* (and two cases that follow *Marolda*), for the proposition that

19  Plaintiffs were required to "describe[e] precisely what information was withheld from

20  Plaintiffs, where the omitted information should (or could) have been revealed, [and]

21  what advertisements, brochures, articles, or promotional or other materials Plaintiffs

22  actually read."  (Mot. at 9-10.)  An identical argument was just rejected in *MacDonald v.*

23  *Ford Motor Company*, -- F. Supp. 2d ---, No. 3:13-CV-02988, 2014 WL 1340339, at *6-

24  7 (N.D. Cal. Mar. 31, 2014).  In *MacDonald*, the court explained:

25          The facts of *Marolda* are dissimilar to those of the instant case. There, the
            dispute concerned an alleged omission within a particular advertisement,
26          which the plaintiff had failed to produce or adequately describe.  The court
            noted that the content of the representation is clearly within plaintiff's
27

28

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

knowledge and accordingly she must describe the contents of the allegedly false representation in detail or she may simply attach a copy of the offer.

> "*As other courts have recognized, the <u>Marolda</u> requirements are not necessarily appropriate for all cases alleging a fraudulent omission*."

*Id.* at \*6 (quoting *Overton v. Bird Brain*, No. 11–cv–1054, 2012 WL 909295, at \*6 (C.D. Cal. Mar. 15, 2012)) (emphasis added) (citations omitted).  As another district court pointed out, requiring a plaintiff to identify the advertisements in which an omission did *not* appear, "defies common sense and real-world business practice.  No [product] manufacturer would ever advertise its product to, in essence, consistently fail…. Such disclosures do not exist in the real world….Product advertising is meant to identify and buttress product features and value, not denigrate and diminish those qualities."  *Clark v. LG Electronics U.S.A.*, No. 13-cv-485, 2013 WL 5816410, at \*6 (S.D. Cal. Oct. 29, 2013).

After rejecting *Marolda*, the *MacDonald* court went on to say what specificity an omission claim requires in this type of case.  The "who, what, when, and how," pleadings are judged based on the "inherent limitations" of an omission claim:

> In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the "where" is the various channels of information through which Ford sold Class Vehicles.  In the aggregate, Plaintiffs have pled sufficient facts to survive a motion to dismiss their CLRA claim.

2014 WL 1340339, at \*6-7.  Other courts have performed similar analyses.  *E.g.*, *Price v. Kawasaki Motors Corp., USA*, No. CV 10-01074, 2011 WL 10948588, at \*3 (C.D. Cal. Jan. 24, 2011) (allegations were sufficient because they "identified the 'who' [the manufacturer], the 'what' (knowing about and concealing material facts regarding the defect), the 'when' (from 2008 to the present), and the 'how' (failing to disclose a remedy to fix the alleged problem)); *see also Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854, 2009 WL 5788762, at \*3-4 (C.D. Cal. June 12, 2009) (allegations that Hyundai

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

had "early knowledge of the defect[]"and "uniformly concealed—and continue[d] to conceal—this defect from consumers" were sufficient under Rule 9(b)).

Plaintiffs' complaint provides the details needed to pass muster under Rule 9(b). Plaintiffs allege that the defect in question affects the TIPM 7, which is the component responsible for controlling electricity throughout the vehicle, and that the defect causes stalling, headlight failure, and a host of other dangerous electrical problems.[2]  (¶¶ 1-2, 19-23, 25.)  Chrysler knew about the TIPM 7 defect before it sold the first class vehicle, as Chrysler employees put 7 million miles on vehicles before they went on sale.  Given the speed and frequency with which the TIPM 7 defect typically becomes apparent, it is not plausible that this preproduction testing would not have alerted Chrysler to the existence of the TIPM 7 defect.  (¶ 35.)  In any event, Chrysler began receiving complaints from frightened drivers as far back as 2008, (¶ 38), and Chrysler issued a (non-public) service bulletin to its dealerships in 2011.  (¶ 39.)  Finally, each Plaintiff bought their vehicle from an authorized Chrysler dealership, so there were many ways for Chrysler to notify customers about the defect, ranging from special handouts to oral warnings.  (¶¶ 49, 54, 60, 65, 72, 82, 88.)  As Chrysler concedes, however, to this day it has not publicly disclosed the problem.  (¶ 41.)  Instead, Chrysler has spent years hiding the information from dealerships, auto technicians, and customers alike.  (¶¶41-48.)  One of Plaintiffs' goals is to compel Chrysler to publicly disclose and fix the TIPM 7 defect, which it steadfastly refuses to do.  (¶ 170, 171.)

---

[2] To the extent more detail is required, Plaintiffs also plead that Chrysler attributes the problem to a "malfunctioning fuel pump relay integral to the TIPM printed circuit board," causing symptoms that include stalling and not starting.  (¶ 27.)  Plaintiffs anticipate that Chrysler's assessment of the defect will be further vetted during discovery.  *Cf. Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (plausibility at the motion to dismiss stage, asks only whether the complaint "'raise[s] a reasonable expectation that discovery will reveal evidence' to support the allegations").

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

**B.** **Chrysler's Failure to Disclose the TIPM 7 Defect Violated Various States' Consumer Protection Statutes.**

**1.** **Count III – Chrysler's Failure to Disclose the TIPM 7 Defect Violated the Florida Deceptive and Unfair Trade Practices Act.**

Chrysler's argument for dismissal of Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) is that an omission claim is actionable only if the defendant owed a special duty to the plaintiff. (Mot. at 10.)  According to Chrysler, such a duty arises only if the defendant has "information that the other party has a right to know because of a fiduciary or other relationship founded on trust and confidence between them." (*Id.*)  Notably, neither of the cases on which Chrysler relies pertains to the consumer protection statute at issue. *Taylor, Bean & Whitaker Mortg. v. GMAC Mortg.*, No. 5:05-CV-260, 2008 WL 3200286 (M.D. Fla. 2008) (analyzing a claim for "fraudulent inducement"); *Advisor's Capital Investments, Inc. v. Cumberland Cas. & Sur. Co.*, No. 8:05-CV-404,  2007 WL 220189, at *3 (M.D. Fla. 2007) (same); *but see Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *1 (S.D. Fla. Nov. 26, 2007) ("FDUTPA was enacted to provide remedies for conduct *outside the reach* of traditional common law torts such as fraud.").

Chrysler's "duty" analysis is contrary to the FDUTPA, which broadly prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. (2011).  Under the FDUTPA, "a deceptive act occurs when 'there is a representation, *omission*, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumers' detriment.'" *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011) (emphasis added) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla.2003)); *accord  Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir.2007) ("The Florida Supreme Court has noted that deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.").  Thus, Chrysler's focus on whether a duty to disclose exists

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

misses the point.  *Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1310 (S.D. Fla. 2008) ("Plaintiffs assert that [defendant's] suggestion that it had no duty to disclose … is irrelevant to their FDUTPA claims.  I agree."); *see also id.* ("[A] duty to disclose is not an element of FDUTPA"); *CareerFairs.com v. United Business Media LLC*, 838 F. Supp. 2d 1316, 1324 (S.D. Fla. 2011) (the three elements of an FDUTPA claim are a deceptive act or unfair practice, causation, and actual damages).  In fact, Chrysler acknowledged in its first motion to dismiss that omissions are actionable under the FDUTPA as long as they are likely to mislead.  (Dkt. # 27 at 12.)

Accordingly, in several similar automotive defect cases, courts have held a manufacturer violates the FDUTPA by failing to disclose "a material defect that diminishes a product's value."  *E.g.*, *Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) (citing *Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. Dist. Ct. App. 2000)).  In *Matthews*, for example, the plaintiff stated a FDUTPA claim by alleging that Honda failed to disclose a known defect that caused paint discoloration on its vehicles.  2012 WL 2520675, at *2-3.  In *Doll v. Ford Motor Company*, the plaintiff stated an FDUTPA claim by alleging that Ford knew about a torque converter defect but concealed its knowledge.  814 F. Supp. 2d at 548; *see also Morris*, 580 F. Supp. 2d at 1310; Fla. Stat. § 501.202 (FDUTPA is to be "construed liberally").  And in *Rothstein v. DaimlerChrysler Corp.*, plaintiffs stated an FDUTPA claim by alleging that Chrysler knowingly concealed a braking system defect.  No. 8:05-cv-1126, 2005 WL 3093573, at *2 (M.D. Fla. Nov. 18, 2005).  Since Plaintiffs have alleged that Chrysler knew of the TIPM 7 defect, yet actively concealed it, causing Plaintiffs and other consumers damages, (¶¶ 1-4), Plaintiffs have stated a viable FDUTPA claim.

Chrysler's two FDUTPA cases are not to the contrary.  Chrysler relies on dicta in *Jovine v. Abbott Labs.*, a case involving recalled baby formula, in which the district court suggested that selling a "broken-down car," without more, would not be unlawful.  795 F. Supp. 2d 1331, 1342 (S.D. Fla. 2011).  The court's point was simply that whether an

9

omission is deceptive is context-dependent—selling a car that won't start would not be deceptive if, for example, it was understood that the buyer wanted to sell it for the spare parts.  On the other hand, selling a purportedly functional car with a known and material safety defect would be likely to mislead.  *Cf. Matthews*, 2012 WL 2520675, at *3; *Doll*, 814 F. Supp. 2d at 548; *Rothstein*, 2005 WL 3093573, at *2.  Chrysler's second FDUTPA case, *Virgilio v. Ryland*, has nothing to do with the sale of products—it turned on *caveat emptor* principles in the context of sales of houses.  680 F.3d 1329, 1335-38 (11th Cir. 2012).  The Court should therefore decline to dismiss Plaintiffs' FDUTPA claim.

## 2.  Count IV – Chrysler's Failure to Disclose the TIPM 7 Defect Violated the Maryland Consumer Protection Act.

Chrysler argues that a duty to disclose under Maryland law arises only in "special" circumstances, such as in the context of insurance contracts or fiduciary dealings.  (Mot. at 11.)  But once again Chrysler's only support is a series of common law fraud cases. (*Id.* (citing *Gegeas v. Sherrill*, 147 A.2d 223, 225 (Md. Ct. Spec. App. 1958); *Latty v. St. Joseph's Society of the Sacred Heart, Inc.*, 17 A.3d 155, 165 (Md. 2011).)  Plaintiff Young does not allege common law fraud—she alleges that Chrysler violated the Maryland Consumer Protection Act (MCPA).  (¶¶ 127-132).

Under the MCPA, a "duty to disclose can arise where there is a safety concern," irrespective of other special circumstances, such as a fiduciary relationship.  *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 546 (D. Md. 2011).  In *Doll*, plaintiffs alleged that Ford failed to disclose a defect that posed a "safety hazard for drivers and passenger of the vehicles."  *Id.* at 534.  The court upheld their claims under the MCPA based on allegations that included that "Ford knew the vehicles were defective and intended for the Plaintiffs to rely on its concealment of these material facts [and that] … Plaintiffs claim that they would have paid significantly less or not have bought the vehicles had they been aware of these omissions."  *Id.* at 546; (*compare* ¶¶ 34-38 (alleging Chrysler knew of the TIPM 7 defect), ¶¶ 41, 42, 45 (alleging Chrysler knew consumers would rely on the

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

1  failure to disclose the defect), and ¶ 45 (alleging that Plaintiffs and others would have

2  paid less for or would not have purchased the vehicles had they been aware of the TIPM

3  7 defect)); *see also Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 262 (Md. 2007)

4  (upholding plaintiffs' MCPA claims where plaintiffs alleged that defendants knew about

5  a defect that posed a risk of substantial injury or death, and concealed the defect from

6  plaintiffs).  Accordingly, Plaintiff Young's allegation that Chrysler failed to disclose the

7  TIPM 7 defect, a known safety hazard, is sufficient to state a claim under the MCPA.

8  **3.    Count V – Chrysler's Failure to Disclose the TIPM 7 Defect**

9  **Violated the Massachusetts Consumer Protection Act.**

10  The Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, prohibits

11  deceptive conduct in commercial transactions.   *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757

12  F.2d 411, 416 (1st Cir. 1985).  Multiple courts have held that the statute requires

13  manufacturers to disclose a material defect affecting their products.  *See, e.g.*, *Henderson*

14  *v. Volvo Cars of N. Am.*, No. 09-4146, 2010 WL 2925913, at *6 (D. N.J. July 21, 2010)

15  (upholding plaintiffs' omissions claims against manufacturer for failing to disclose

16  transmission defect); *Fleisher v. Fiber Composites, LLC*, No. 12-1326, 2012 WL

17  5381381, at *11 (E.D. Pa. Nov. 2, 2012) (in case against manufacturer of deck products,

18  agreeing with plaintiffs that the complaint "adequately allege[d] that [defendant's]

19  nondisclosures of th[e] defect constitute[d] a deceptive act under the consumer protection

20  statutes…"); *see also Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 886 (2008) ("a

21  claim, supported by sufficient factual allegations, that the plaintiffs own vehicles

22  manufactured and sold by Ford as meeting required government safety standards; that the

23  vehicle's door handles, as Ford knew, failed to comply with NHTSA safety standards;

24  and that the noncompliance was not properly remedied, would support a cause of action

25  under G.L. c. 93A, § 9."); *In re Gen. Motors Corp.*, 383 F. Supp. 2d 1340, 1341 (W.D.

26  Okla. 2005).

27  Chrysler argues that Plaintiffs must establish a preexisting legal duty, such as a

28  fiduciary relationship or a misleading statement by Chrysler.  (Mot. at 13.)  But

11

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

Chrysler's support for this contention is not on point.  The first case dealt with common law fraud, not the Massachusetts Consumer Protection Act.  *In re Access Cardiosystems, Inc.*, 404 B.R. 593, 642-45 (D. Mass. 2009); *see also V.S.H. Realty*, 757 F.2d 411 at 417 ("Massachusetts case law suggests that 93A …allow[s]…a cause of action even in the absence of a duty to disclose.").  In the second case, the court's analysis was shaped by the fact that the plaintiffs had specifically alleged that a fiduciary relationship existed. *Indus. General Corp.*, 44 F.3d at 44.  Finally, the third case did not involve a transaction involving goods or services, but instead dealt with a sale of land in which plaintiff argued that even though the defendant had provided an "accurate statement of soil tests," it should be liable for not also providing "an explanation of the significance of the test results."  *Nei v. Boston Survey Consultants*, 446 N.E.2d 681, 684 (1983).  As Plaintiffs' claim does not arise under common law fraud, is not premised on the existence of a fiduciary relationship, and bears no resemblance to the facts in *Nei*, Chrysler's motion to dismiss should be denied.

### 4.      Count VI – Chrysler's Failure to Disclose the TIPM 7 Defect Violated the New Jersey Consumer Fraud Act.

A claim under the New Jersey Consumer Fraud Act (NJCFA) requires a showing that "the defendant knowingly omitted a material fact in advertising or selling the product."  *Henderson,* 2010 WL 2925913, at *6; *accord* N.J. Stat. Ann. § 56:8-2 (prohibiting "the knowing, concealment, suppression, or omission of any material fact").  Serious automotive defects, particularly defects that pose a safety hazard, are the type of "material fact" that require disclosure.  *Nelson v. Nissan N. Am.*, 894 F. Supp. 2d 558, 568-69 (D.N.J. 2012) (NJCFA claim stated where Nissan failed to disclose a dangerous transmission defect); *Henderson*, 2010 WL 2925913, at *5-6 (NJCFA claim stated where Volvo failed to disclose a defect causing premature transmission failure) (following *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527 (D.N.J. 2008); *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009)); *see also Perth Amboy Iron Works, Inc. v. Am. Home Assur. Co.*, 543 A.2d 1020, 1025-26 (N.J. Super. App. Div.

1988) (holding that whether defendant violated the NJFCA "by not informing plaintiffs of the allegedly defective nature of the engines was open to question" and "active concealment of known safety or significant operational problems" violates the NJFCA).

In seeking dismissal of the NJCFA claim, Chrysler contends that vehicle manufacturers need not disclose defects that require repair "after the expiration of the warranty period."  In support, Chrysler relies exclusively on *Perkins v. DaimlerChrysler*, and two cases that cite *Perkins*.  (Mot. at 12-13.)  But here, unlike *Perkins*, the defect did not manifest outside of warranty.  As discussed in section IV.D below, the TIPM in Plaintiff Melville's vehicle began to malfunction *within* the emissions warranty period. (¶¶ 90-92.)  In addition, "the *Perkins* court noted that plaintiff had failed to allege that the part created a danger to others or that the part actually required repair or replacement." *Nelson*, 894 F. Supp. 2d at 569 (citing *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99 (App. Div. 2006)).  Since the TIPM 7 defect "create[s] a dangerous condition," and Plaintiff Melville and others have "incurred charges" repairing their vehicles, Chrysler's failure to disclose the defect violated the NJCFA.  *Id.*

Finally, Chrysler yet again relies on non-consumer protection statute cases to argue that a duty to disclose requires a fiduciary duty or other special relationship.  (Mot. at 12.) *See United Jersey Bank v. Kensey*, 704 A.2d 38 (N.J. Sup. Ct. App. Div. 1997) (plaintiff did not allege, and the court did not discuss, claims under the NJCFA); *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (same); *Green v. General Motors Corp.*, No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Sup. Ct. App. Div. 2003) (discussing duty in the context of common law fraud, not NJCFA).  And in *Harvey*, one case Chrysler cites that did pertain to the NJCFA, the suit had nothing to do with an undisclosed defect—plaintiff was trying to hold a manufacturer liable for thefts by third parties.  *See Harvey v. Nissan N. Am., Inc.*, No. C-12016-04, 2005 WL 1252341, at *15 (N.J. Super. Ct. Ch. Div. 2005) ("there are no latent defects just a commodity attractive to thieves.").

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

C.    **Plaintiff Young's Allegations Satisfy the Requirements of the Maryland Consumer Protection Act.**

Chrysler also argues that Plaintiff Young's Maryland Consumer Protection Act (MCPA) claims fail because Chrysler did not sell the defective vehicle directly to Ms. Young.  Chrysler's argument is contrary to Maryland law.  In *Morris v. Osmose Wood Preserving*, for example, the court wrote that "[i]t is quite possible that a deceptive trade practice committed by someone who is not a seller would so infect the sale or offer for sale to a consumer that the law would deem the practice to have been committed 'in' the sale or offer for sale."  667 A.2d 624 (Md. 1995).  For example, "a deceptive statement appearing on a manufacturer's packaging that is targeted to consumers…may provide a claim against the manufacturer because the statements were made in the sale or offer for sale of the consumer goods."  *Id.*  Here, Chrysler's failure to disclose the TIPM 7 defect directly affected Plaintiffs' decision to purchase their vehicles.  (¶ 45.)  Chrysler not only kept the information out of its customers hands directly by failing to disclose it to them, it also concealed the information indirectly by failing to tell its own authorized dealerships, who were the points of contact for most purchasers and lessees.  (¶¶ 41-45.)  Chrysler's failure to disclose the defect thus "infected" the transaction, bringing the conduct within the scope of the MCPA, as reflected by the fact that courts have specifically upheld MCPA claims against automobile manufacturers.  *See Lloyd v. General Motors Corp.*, 916 A.2d 257, 275, 281, (Md. 2007); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 548 (D. Md. 2011).

D.    **Plaintiffs Have Sufficiently Pled Chrysler's Breach of Emissions Warranty in Violation of the Magnuson-Moss Warranty Act.**

Plaintiffs allege that Chrysler violated the Magnuson-Moss Warranty Act (MMWA) by refusing to perform TIPM 7 repairs for free as required by the statutory emissions warranty enacted in California, Maryland, Massachusetts, New Jersey, and eight other states.  13 Cal. Code Regs. § 2035, *et seq.* (California); N.J. Admin. Code. § 7:27 (New Jersey); Md. Code. Regs. § 26:11:34 (Maryland); 310 Code Mass. Regs. §

14

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

7:40 (Massachusetts); (*see also* ¶¶ 167).  The statutory emissions warranty, which does not vary much from state to state, requires manufacturers to warrant "any part…which affects any regulated emission…."  *See* 13 Cal. Code Regs. § 2035; 2037(b).  The duration of the warranty varies depending on "the cost of the part, labor, and standard diagnosis."  § 2037(b), (c)(2) .  If the total cost exceeds about $550,[3] then the mandated warranty length is "seven years or 70,000 miles, whichever first occurs."  § 2037(b)(3).  Chrysler does not contest that the TIPM repairs typically exceed the dollar amount threshold for the 7-year, 70,000-mile coverage.  (¶ 164.)

Chrysler's first basis for challenging Plaintiffs' MMWA claim is based on its contention that the TIPM is not an "emissions-related part."  (Mot. at 15.)  Whether the TIPM is an emissions-related part, however, is a question of fact that turns on whether the TIPM affects emissions.  § 2035.  As set forth in Plaintiffs' complaint, various components that are similar to or controlled by the TIPM are emissions-related parts according to the California Air Resource Board (CARB), including the fuel pump, fuel injection components, and electronic controls.  (¶ 163.)  Although Chrysler notes in its brief that the TIPM is not expressly named in CARB's Parts List, that list is over 30 years old; the TIPM, like many other modern car parts, did not exist when the list was written.  (¶ 163.)  Moreover, while Chrysler implies that the TIPM has only a tangential effect on emissions, the fact of the matter is that Chrysler itself recently initiated an "emissions recall" to repair a TIPM defect.  (¶ 31.)  Plaintiffs have thus adequately alleged, and will

---

[3] The California Air Resources Board calculates the high cost threshold for each model year based on prevailing prices and labor rates.  13 Cal. Code Regs. § 2037(c).  For the 2010 through 2014 model years, the high cost limit ranged from $550 to $580.  (*See, e.g.*, Air Resources Board, Manufacturers Advisory Correspondence 2009-02), *available at* http://www.arb.ca.gov/msprog/macs/mac0902/mac0902.pdf (setting 2010 model year cost limit); Air Resources Board, Manufacturers Advisory Correspondence 20131-01 (setting 2013 model year cost limit), *available at* http://www.arb.ca.gov/msprog/macs/mac1301/mac1301.pdf.

15

1  ultimately prove, that the TIPM affects emissions, so the Court should not dismiss

2  Plaintiffs' MMWA claim at this stage of the case.

3          Separately, Chrysler challenges Plaintiffs' MMWA claim because, it says, the

4  MMWA only covers "written warranties," which are defined as warranties made "by a

5  supplier."  Chrysler contends that "a statute is not a written promise by a supplier," and

6  thus not within the coverage of the MMWA.  (Mot. at 14.)  Chrysler does not dispute,

7  however, that it provided its customers with the written emissions warranty that Chrysler

8  submitted with its Request for Judicial Notice.  (*See generally* (Dkt. # 42-2).)  Chrysler

9  provided that warranty to purchasers in the states that have enacted the statutory

10  emissions warranty, and Chrysler does not contest that the warranty is an enforceable

11  contract.  (Motion at 5-6, 15-16.)

12          Although Chrysler argues that its booklet is the "written warranty," and the

13  statutory warranty is not, this argument fails to recognize that the state statutes are

14  incorporated into the written warranty that Chrysler provided.  "It is well settled the

15  existing applicable law is part of every contract, the same as if expressly referred to or

16  incorporated in its terms."  *People v. Gipson*, 12 Cal. Rptr. 3d 478, 481 (Cal. App. 2004)

17  (citing *Farmers' & Merchants' Bank of Monroe, N.C. v. Fed. Reserve Bank of Richmond,*

18  *VA*, 262 U.S. 649, 660 (1923)).  Thus, the laws that "subsist at the time and place of the

19  making of a contract, and where it is to be performed, enter into and form a part of it, as

20  fully as if they had been expressly referred to or incorporated in its terms."  *Pub. Util.*

21  *Dist. No. 1 of Franklin Cnty. v. Big Bend Elec. Coop., Inc.*, 618 F.2d 601, 602 n.4 (9th

22  Cir. 1980); *Noble v. Corporacion Insular de Seguros*, 738 F.2d 51, 53 (1st Cir. 1984)

23  ("[W]hen parties conclude agreements on matters regulated by statute, statutory

24  provisions are implicitly incorporated into the contract."); *Resolution Trust Corp. v.*

25  *Diamond*, 45 F.3d 665, 673 (2d Cir. 1995) ("When parties enter into a contract, they are

26  presumed to accept all the rights and obligations imposed on their relationship by state

27  (or federal) law.").  In sum, while Chrysler may technically be right that the statutory

28  warranty—standing on its own—is not a written warranty under the MMWA, the

16

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

statute's provisions are incorporated into Chrysler's written emissions warranty by operation of law.

Finally, Chrysler points to the fact that the TIPM is not listed as a covered component in Chrysler's warranty booklet. (Mot. at 15-16.) The scope of the California emissions warranty is determined by statute, however, not just Chrysler's warranty booklet. As discussed above, the statute covers all vehicle parts that affect emissions, not just those that a manufacturer happens to list in its warranty booklet. § 2035(c)(2)(B). Because the TIPM 7 affects emissions and qualifies as a "high-priced warranted part," Chrysler is required to cover the cost of repairs until 7 years or 70,000 miles have passed. Plaintiffs Lightfoot (California), Young (Maryland), Soule (Massachusetts), and Melville (New Jersey) have had repairs inside the 7-year, 70,000-mile warranty period.[4] (¶¶ 166.) And Chrysler did not honor the emissions warranty for any of those repairs. (¶¶ 167-68.) Plaintiffs have thus stated a viable claim for breach of the emissions warranty under the MMWA.

///
///
///
///
///
///
///
///

---

[4] Plaintiffs Young and Melville both paid to replace their vehicles' TIPMs within three years and 50,000 miles. Thus, even if Chrysler were correct, and the fact that the TIPM is not expressly listed under the 7-year, 70,000 mile warranty in its booklet has legal effect, Chrysler still breached its obligation to those Plaintiffs under the 3-year, 50,000 mile warranty in its booklet (which covers any defective "emission-related part," and does not set forth a list of covered parts). (Dkt. # 34-1.)

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)

## V. __CONCLUSION__

For the foregoing reasons, Plaintiffs respectfully request that Chrysler's Motion to Dismiss be denied.

DATED: June 27, 2014

                                        **GIRARD GIBBS LLP**

                                        By:   /s/

                                        Eric H. Gibbs
                                        David Stein
                                        Scott M. Grzenczyk
                                        601 California Street, 14th Floor
                                        San Francisco, California 94108
                                        Telephone:  (415) 981-4800
                                        Facsimile:  (415) 981-4846

                                        Todd M. Schneider
                                        Joshua G. Konecky
                                        **SCHNEIDER WALLACE
                                        COTTRELL KONECKY LLP**
                                        180 Montgomery Street, Suite 2000
                                        San Francisco, California 94104
                                        Telephone:  (415) 421-7100
                                        Facsimile:  (415) 421-7105

                                        *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO CHRYSLER'S SECOND MOTION TO DISMISS
CASE NO. 2:13-cv-08080-DDP (VBKx)