O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER VELASCO, CHRISTOPHER WHITE, JACQUELINE YOUNG, and CHRISTOPHER LIGHT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHRYSLER GROUP LLC ,<br><br>Defendant. | Case No. CV 13-08080 DDP (VBKx)<br><br>**ORDER RE CENTER FOR AUTO SAFETY'S MOTION TO UNSEAL AND MOTION TO INTERVENE**<br><br>[Dkt. Nos. 81, 82] |

Presently before the Court are motions by nonparty Center for Auto Safety ("CAS") to intervene in this matter and to unseal documents related to Plaintiffs' prior motion for a preliminary injunction, (Dkt. No. 49), which was denied on October 27, 2014. (Dkt. No. 88.) Having considered the parties' submissions and oral arguments, the Court adopts the following order.

**I. BACKGROUND**

This case is a putative class action regarding the alleged failure of an electronic control unit, known as the "TIPM-7," installed in a number of late-model Chrysler vehicles. On March

26, 2014, Magistrate Judge Kenton issued a protective order allowing any party to designate a document in the case "Confidential," which would protect the document from public view. (Dkt. No. 35.)  On September 18, 2014, Plaintiffs moved for a preliminary injunction authorizing them to send potential class members a preliminary notice warning of the potential for dangerous component failures in Chryslers equipped with the TIPM-7. (Dkt. No. 49.)  Plaintiffs applied to submit certain documents related to the motion "provisionally under seal," because the parties were still attempting to reach settlement.  (Dkt. No. 51.)  Plaintiffs nonetheless expressed the opinion that the documents should be in the public record, and they requested the right to subject the documents to "later motion practice" to unseal "should the parties be unable to resolve their disagreement."  (Id.)

    Defendant similarly filed an application to submit documents in opposition to the motion under seal, primarily because the documents constituted confidential business information.  (Dkt. No. 63.)  The Court granted both parties leave to file under seal.  The documents filed under seal were as follows:

- Unredacted copies of the Motion and Memorandum in Support of the Motion, the proposed Order, the Opposition, and the Reply;
- Unredacted declaration of David Stein and Exhibits A-U attached thereto;
- Unredacted declaration of Rachel Naor and Exhibit P attached thereto;
- Unredacted declaration of James Bielenda and Exhibits A-D attached thereto;

- Exhibits B, C, E, F, and Q attached to the declaration of Dylan Hughes;
- The parties' various applications and proposed orders regarding the sealing of the above documents.

On October 27, 2014 the Court heard oral arguments and denied the motion for preliminary injunction. (Dkt. No. 88.)

On October 23, 2014, nonparty CAS filed these motions to intervene in the case and to unseal the sealed portions of the record on the motion for preliminary injunction. (Dkt. Nos. 81, 82.) Defendant opposes the motions. (Dkt. Nos. 95, 96.)

## II. LEGAL STANDARD

"Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b) . . . ." San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose), 187 F.3d 1096, 1100 (9th Cir. 1999). Rule 24(b) ordinarily requires the intervenor to show "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992). However, where a nonparty proposes to intervene solely for the limited purpose of ensuring public access to court documents, no independent ground for jurisdiction is required. Id.

Ordinarily, there is a strong presumption that court records should be open to public inspection. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). However, the right is not absolute, and public access may be denied, for example, where the records involved contain sensitive business information, the

3

release of which "might harm a litigant's competitive standing." Id. at 598. "[M]ost judicial records may be sealed only if the court finds 'compelling reasons.' However, a less exacting 'good cause' standard applies to . . . previously sealed discovery attached to a nondispositive motion.'" Oliner v. Kontrabecki, 745 F.3d 1024, 1025 (9th Cir. 2014) (citations omitted) (internal quotation marks omitted).

**III. ANALYSIS**

**A.   Motion to Intervene**

CAS argues that it has satisfied the requirements for permissive intervention under Rule 24(b), because it has intervened in a timely manner and its attempt to unseal documents in the case clearly shares "common questions of law and fact" with the main action.  Defendant does not dispute that CAS meets these requirements, but argues that the Court should nonetheless deny the motion to intervene because the intervention could prejudice the adjudication of its rights, CAS's interests are adequately represented by the original parties, and it does not serve the principle of judicial economy to allow CAS to intervene.  (Opp'n to Mot. Intervene at 2-8.)

On the merits, the Court finds it likely that CAS has the better argument.  Nonetheless, the proposed intervention is for the sole purpose of unsealing the documents in question, and the Motion to Unseal is denied, Part III.B. infra.  There is no other reason for CAS to be a party to this action.  The Motion to Intervene is therefore denied without prejudice.

**B.   Motion to Unseal**

**1.   Legal Standard**

4

The public is presumptively entitled to review court records. Ordinarily, a party must show "compelling reasons" to seal a court document. Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006). However, the party need only show "good cause" to keep sealed records attached to a "non-dispositive" motion. Id. at 1180. Defendant argues that the motion for preliminary injunction was such a "non-dispositive" motion. CAS argues, on the other hand, that a motion for preliminary injunction can be "dispositive" if "the documents at issue are, in fact, relevant to the merits of a case." (Reply ISO Mot. Unseal at 5:12-14.) Here, CAS argues, the documents sought are relevant to the merits, the preliminary injunction motion should be considered "dispositive," and Defendant should be required to show "compelling reasons" why the documents should remain sealed.

There is little clarity as to what, exactly, constitutes a "dispositive" motion. "Aside from noting that summary judgment motions are dispositive, and that discovery sanctions motions are non-dispositive, the distinction has not been articulated by the Ninth Circuit." Dish Network L.L.C. v. Sonicview USA, Inc., No. 09-CV-1553 L (NLS), 2009 WL 2224596, at *6 (S.D. Cal. July 23, 2009) (citations omitted). Plaintiff cites a recent District of Idaho case, Melaleuca Inc. v. Bartholomew, for the proposition that a motion for preliminary injunction is a dispositive motion, because "[i]njunctive relief proceedings involve significant discussion of the merits of the case." No. 4:12-CV-00216-BLW, 2012 WL 5931690, at *2 (D. Idaho Nov. 27, 2012) (internal quotation mark omitted). See also Selling Source, LLC v. Red River Ventures, LLC, 2011 WL 1630338, *5 (D.Nev.2011); Dish Network, 2009 WL 2224596, at

5

\*6. The Court does not find this argument persuasive, for two reasons.

First, it ignores the plain meaning of the word "dispositive": motions for preliminary injunction do not actually create any sort of "disposition," in the sense of a *final* determination on some issue.[1] The Northern District of California rejected arguments almost identical to those made by CAS here, precisely because the preliminary injunction did not offer a final resolution on the merits:

> According to the media entities . . . a preliminary injunction is dispositive because such a motion "inevitably involve[s] consideration of the merits of a dispute." *But this argument misconstrues the discussion in* <u>Kamakana</u>, *which emphasizes the "resolution of a dispute on the merits," not the mere "consideration" of the merits.* The media entities similarly place undue emphasis on the <u>Kamakana</u> court's characterization of non-dispositive motions (that such motions "are often unrelated, or only tangentially related, to the underlying cause of action.") . . . .
>
> In view of the Ninth Circuit's reasoning, the court concludes that a preliminary injunction motion is not dispositive because, unlike a motion for summary adjudication, it neither

---

[1] Black's, for example, defines "disposition" as "[a] final settlement or determination" and "dispositive" as "bringing about a final determination." Black's Law Dictionary 505 (8th ed.2004). <u>See also</u> <u>In re Seracare Life Sciences, Inc.</u>, No. 05-CV-2335-H (CAB), 2007 WL 935583, at \*16 (S.D. Cal. Mar. 19, 2007) ("[B]ecause the case against KPMG will be over if the Court grants its motion, KMPG's motion is dispositive.").

1     resolves a case on the merits nor serves as a substitute for
2     trial.
3 In re Nat'l Sec. Agency Telecommunications Records Litig., No. MDL
4 06-1791 VRW, 2007 WL 549854, at *3-4 (N.D. Cal. Feb. 20, 2007)
5 (emphasis added). See also Reilly v. MediaNews Grp. Inc., No.
6 C06-04332 SI, 2007 WL 196682 (N.D. Cal. Jan. 24, 2007) (treating
7 motion for TRO as non-dispositive).
8     Second, even if the Melaleuca, Selling Source, and Dish
9 Network courts are correct that a motion for a preliminary
10 injunction *can* be a dispositive motion, it does not follow that
11 *every* motion for an injunction will be dispositive. Likely that
12 determination should depend on the nature of the relief requested.
13     For example, in Dish Network, the district court granted
14 plaintiff satellite television companies' ex parte motion for a
15 temporary restraining order and a writ of civil seizure against
16 manufacturers of equipment allowing consumers to "intercept and
17 steal" the plaintiffs' signals. Dish Network, 2009 WL 2224596, at
18 *1. The motion asked the court to enjoin a defendant from
19 continuing a disputed business practice – a temporary version of
20 the relief requested in the underlying lawsuit. Necessarily, in
21 order to grant the motion, the court had to peek into the merits of
22 the case, in order to determine that there was sufficient evidence
23 of the piracy alleged in the underlying case. Moreover, the TRO
24 covered no other extraneous matters; thus, the court's decision on
25 the TRO was limited to, and fundamentally dependent on, an
26 examination of the merits of the case.
27     In this case, however, the motion was *not* a motion to
28 temporarily grant the relief ultimately sought in underlying suit;

7

rather, it was a request to send notice of potential problems with Defendant's vehicles to thousands of purchasers. Determining whether to send such notice necessarily involved consideration of the widest possible range of vehicles, some of which may ultimately be weeded out by the parties in the course of litigation. Thus, it involved evidence and issues which may ultimately not factor into the underlying case. Moreover, in <u>Dish Network</u> the plaintiff requested a writ of seizure, which was necessary to prevent the destruction of evidence crucial to the main case. Here, however, the prosecution of the main case did not turn on the outcome of the motion; the case could easily have continued without the motion ever being filed at all. Thus, unlike the motion in <u>Dish Network</u>, the motion in this case was not even intended to *aid* in the ultimate disposition of the case.

Because the motion for preliminary injunction here was not a resolution of any issue on the merits, was broader and shallower in scope than a true consideration of the merits, and was not necessary to the resolution of the case, the Court finds that the motion was not dispositive.

Because the motion was a non-dispositive motion, and the exhibits attached to it were sealed under the magistrate's protective order, the Court conducts its analysis under the good cause standard, not the compelling reasons standard.

**2. Good Cause to Keep Documents Sealed**

The Court finds that in this case there is good cause to keep the documents sealed at this time, for at least three reasons. First, a number of the documents seem to include Defendant's technical information, which could comprise trade secrets. Of

course, technical information is only a trade secret if it provides competitors with some useful advantage.[2] Techniques and processes which are obvious to anyone in the industry do not count as trade secrets.[3]

In a declaration attached to the Opposition, James Bielenda, Chrysler's Manager of Product Investigations, explains that some of the documents could provide competitors with information about Defendant's manufacturing and testing processes, specifications, and standards, as well as Defendant's "operational capacity." (Bielenda Decl., ¶¶ 14-17.) Such information could provide competitors with specific guidance as to how to manufacture their own products more efficiently, without having to engage in the expensive research and development that Defendant has already done. The disclosure of such specific technical information, in other words, would enable competitors to "leapfrog" Defendant's hard engineering work and unfairly reap the competitive rewards.

Under this rationale, documents which contain specific technical information about Defendant's manufacturing and testing processes, or product standards and tolerances, are likely to be trade secrets. As far as the Court can determine at present, given limited briefing, the group of documents containing such

---

[2] "The economic value of that property right [in a trade secret] lies in the competitive advantage over others that Monsanto enjoys by virtue of its exclusive access to the data, and disclosure or use by others of the data would destroy that competitive edge." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1012 (1984).

[3] Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 465 (9th Cir. 1990) (affirming a district court holding that "[i]t would be absurd to permit [the [plaintiff] to appropriate as his own 'secrets' common pedagogical and job search techniques which would be used in any job placement course.").

information would likely encompass at least the following: Exhibits A-C, E, and J-P (Dkt. No. 57); the Bielenda Decl. (Dkt. No. 65) and Exhibit A thereto; and Exhibits E and F to Hughes Decl. (Dkt. No. 74).

Other documents currently under seal seem to have less claim to trade secret status; the bulk of the remaining documents are internal communications among Defendant's employees, or between its employees and outside contractors, that do not appear to contain significant technical information. A few others are letters between counsel. Nonetheless, the Court declines to unseal them at this time.

Important policy considerations favor not unsealing the documents. As Defendant points out, the record at this time is incomplete. While bringing to light and publicly examining product failures, and manufacturers' responsibility for such failures, is one of the key functions of this kind of litigation, it is also important that the Court not release information that could become "a vehicle for improper purposes." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). One such improper purpose would be to "promote public scandal." Id. Speaking generally, with absolutely *no* reference to CAS itself, there is some danger that the wide publication of selected, out-of-context materials, in a matter that is only in the early stages of litigation, could unnecessarily harm Defendant and present an unfair picture of the alleged facts to the public.[4]

---

[4]Of course, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to
(continued...)

10

1    This concern is bolstered by the fact that, even with complete
2 access to the sealed documents, the Court could not come to any
3 solid conclusion as to what they might prove – which is why the
4 Court denied the motion for preliminary injunction in the first
5 place.  (Dkt. No. 88.)  The disclosure of early, incomplete
6 discovery documents that the Court itself found inconclusive has
7 great potential to mislead the public.

8    This is particularly the case when it comes to the disclosure
9 of small snippets of informal corporate communications, which may
10 frequently be incomplete, inaccurate, jocular, or filled with an
11 insider's shorthand or jargon.  An offhand remark in an email can
12 easily become the "gotcha" quote in headlines and press releases,
13 and Defendant would be forced to litigate the case in court *and*
14 litigate in the press.  Moreover, as investigations of alleged
15 TIPM-7 failures are ongoing both inside and outside the company,
16 the Court is leery of creating an environment that would chill free
17 and open communication among Defendant's engineers, or incentivize
18 the use of closed-door meetings that leave no paper trail.

19    The motion to unseal is therefore denied, except for the
20 documents described in Part III.B.4., <u>infra</u>.

21    This is not to say that these documents may never be unsealed,
22 or that identical information will not become available to the
23 public in the course of the litigation.  When the Court is called
24 upon to make *dispositive* rulings, the "compelling reasons" standard

---

[4](...continued)
seal its records."  <u>Kamakana v. City & Cnty. of Honolulu</u>, 447 F.3d 1172, 1179 (9th Cir. 2006).  Certainly, in the event that the full adjudication of this case reveals facts that are embarrassing to Defendant, that will provide no reason to hide them from public view.

11

will apply, and Defendant will be granted much less deference in protecting its technical information and its internal communications.  Because the record will be more complete, there will be less concern that disclosure could give a false impression or unnecessarily promote public scandal.  The Court may also subject Defendant's alleged trade secrets to significantly more scrutiny at that point.  The Court emphasizes that this order is limited to the narrow question posed – whether the sealed documents documents submitted in support of arguments about the motion for preliminary injunction should be unsealed at this time.

**3.   Briefs and Declarations**

In its Reply, CAS argues that "[b]ecause the parties' briefing and declarations on the motion for preliminary injunction are not even arguably discovery documents, they cannot possibly fall under the exception to the presumption of public access for sealed discovery documents attached to non-dispositive motions.  Therefore . . . the compelling reasons standard indisputably applies to these records."  (Reply ISO Mot. Unseal at 6.)  This argument relies on a highly literal reading of the rule that completely negates its intended effect.  There can be no reason to attach a discovery document to a motion or brief except in order to make reference to its contents, and it would be nonsensical to carefully exempt the discovery document from disclosure, only to allow full disclosure of citations to it in a briefing paper.  The same standard applies to the discovery documents and to the references to them in the briefs and declarations.  The redacted portions of the briefs and declarations remain under seal.

///

**4.   Disclosures Agreed to by Defendant**

Defendant has no objection to the unsealing of: Naor Decl. & Ex. P thereto; Stein Decl., Exs. H, Q; Hughes Decl., Ex. Q.  (Opp'n to Mot. Unseal at 1 n.1.).  These documents will therefore be unsealed.

**IV.   CONCLUSION**

CAS's Motion to Intervene and Motion to Unseal are DENIED. However, the denial is without prejudice, and CAS is free to move to intervene again in the event that future motions also present questions of public access to court records.  Additionally, as all parties agree to the unsealing of certain documents, the Court hereby ORDER the Plaintiffs to file a single new document entitled "DOCUMENTS PREVIOUSLY FILED, UNSEALED AS ORDERED BY THE COURT" comprised of one unredacted copy of each of the following: Naor Decl. (Dkt. No. 55) & Ex. P thereto; Exs. H, Q to Stein Decl. (Dkt. No. 57); Ex. Q. to Hughes Decl. (Dkt. No. 74).

IT IS SO ORDERED

Dated: December 30, 2014

　　　　　　　　　　　　　　　　　DEAN D. PREGERSON
　　　　　　　　　　　　　　　　　United States District Judge