O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER VELASCO, et al., ) | Case No.  CV 13-08080 DDP (VBK) |
| Plaintiff, ) | |
| ) | **AMENDED ORDER GRANTING IN** |
| v. ) | **PART AND DENYING IN PART** |
| ) | **MOTION TO UNSEAL** |
| CHRYSLER GROUP LLC, ) | |
| Defendants. ) | [Dkt. 82] |
| ) | |
| ) | |
|                                                                                      ` | |

Presently before the court is nonparty Center for Auto Safety's ("CAS") Motion to Unseal documents related to Plaintiffs' motion for a preliminary injunction, (Dkt. 49), which was denied on October 27, 2014 (Dkt. 88.). Having reviewed the parties' original submissions, as well as supplemental filings, and heard oral argument, the Court issues the following Order.

**I.   BACKGROUND**

The issue before the court arises out of a class action lawsuit brought by purchasers of certain Dodge Durango and Jeep Grand Cherokee vehicles against the Chrysler Group LLC ("Chrysler"). (See Dkts. 105, 141, 167.) The case, which has since

1  settled, involved allegations that Chrysler violated various state consumer protection
2  statutes by failing to disclose certain product defects in their vehicles. (*See* Second
3  Amended Complaint ("SAC") ¶¶ 20-21.) Specifically, Plaintiffs alleged that there were
4  defects in the Total Integrated Power Module ("TIPM"), which controls and distributes
5  power to a vehicle's electrical systems. As a result of the defect, vehicles allegedly did not
6  promptly and reliably start, would stall at high speed, had fuel pumps that did not turn
7  off, and experienced random and uncontrollable activity of the horn, windshield wipers,
8  and alarm system. (*Id.* ¶ 23.)
9      At the outset of litigation, Magistrate Judge Kenton issued a protective order
10  allowing any party to designate a document in the case "Confidential," which would
11  protect the document from public view. (Dkt. 35.) Shortly after Defendants filed an
12  Answer to the Operative Complaint, Plaintiffs moved for a preliminary injunction
13  authorizing them to send then-potential class members a preliminary notice warning
14  them of the alleged TIMP defects. (Dkt. 49.) Consistent with the protective order, both
15  Plaintiffs and Defendant submitted applications to file certain documents related to the
16  motion under seal. (*See* Dkts. 49, 51, 63.) The Court granted both parties leave to file
17  under seal.
18      While the preliminary injunction motion was pending, nonparty CAS filed
19  motions to intervene in the case and unseal the sealed portions of the record on the
20  motion for preliminary injunction. (Dkts. 81, 82.) Defendant opposed the motions. (Dkt.
21  95, 96.) One point of contention between the parties was whether Chrysler was required
22  to show "compelling reasons" for keeping the documents under seal or whether "good
23  cause" was sufficient. Relying on language from Ninth Circuit case law that a party need
24  only show "good cause" to keep sealed records attached to a "non-dispositive motion,"
25  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), the court focused
26  its inquiry on whether the preliminary injunction motion at issue here constituted a non-
27  dispositive or dispositive motion, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122,
28  1136 (9th Cir. 2003) (holding that documents attached a dispositive motion can only be

kept under seal where there are "compelling reasons"). The court determined that the preliminary injunction motion was "non-dispositive," and thus found that Chrysler needs only to show "good cause" for keeping the documents under seal. (Dkt. 105 at 8.) Applying this standard, the court concluded that there was good cause to keep the documents under seal and denied CAS's Motion.

On appeal, the Ninth Circuit accepted the district court's determination that the preliminary injunction motion at issue was non-dispositive, *see Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir.), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016), but clarified that the dispositive/non-dispositive binary was not the correct approach for determining which standard to apply when deciding whether to keep records under seal. Instead, the court of appeals explained that "public access will turn on whether the motion is more than tangentially related to the merits of a case." *Id*. at 1101. Because the preliminary injunction motion was more than "tangentially related" to the merits of the case, the Ninth Circuit vacated the court's order regarding the Motion to Unseal and remanded for consideration under the compelling reasons standard.

During the pendency of the appeal, the parties to the TIPM litigation settled their dispute and the court entered a Final Order and Judgment on January 27, 2016. (Dkt. 167.) After receiving the Ninth Circuit's mandate, the court directed the parties to submit supplemental briefing on whether the documents which were still under seal met the "compelling reasons" standard. In the course of that briefing, Chrysler has submitted revised public versions of the exhibits in dispute with limited redactions. (*See* Dkt. 181.)

## II. LEGAL STANDARD

A court must "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "That is, the party must articulate compelling reasons

1 supported by specific factual findings that outweigh the general history of access and the
2 public policies favoring disclosure . . . ." *Id.* (internal quotations and citations omitted).
3 What constitutes a "compelling reason" is "best left to the sound discretion of the trial
4 court." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). "Examples include when
5 a court record might be used to 'gratify private spite or promote public scandal,' to
6 circulate 'libelous' statements, or 'as sources of business information that might harm a
7 litigant's competitive standing.'" *Center for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon*,
8 435 U.S. at 598–99).

9 Against this backdrop, courts have "carved out an exception," *Foltz*, 331 F.3d at
10 1135, for sealed materials attached to a motion that is only "tangentially related to the
11 underlying cause of action." *Center for Auto Safety*, 809 F.3d at 1099 (citing *Phillips ex rel.*
12 *Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213–14 (9th Cir. 2002). The oft-cited
13 example is a discovery motion unrelated to the merits of a case. *See Phillips*, 307 F.3d at
14 1213; *Kamakana*, 447 F.3d at 1172. Under this exception, a party need only meet a less
15 stringent "good cause" standard. Barring such an exception, however, the court must
16 apply the "compelling reasons" standard.

17 **III. DISCUSSION**

18 The Ninth Circuit has explained that "in general, 'compelling reasons' sufficient to
19 outweigh the public's interest in disclosure and justify sealing court records exist when
20 such 'court files might have become a vehicle for improper purposes,' such as the use of
21 records to . . . release trade secrets." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir.
22 2008). Indeed, both Chrysler and CAS recognize that protection of trade secrets is well-
23 established as a "compelling reason" to keep records under seal and instead focus on
24 whether the documents Chrysler seeks to keep under seal properly qualify as such. (*See*
25 CAS Supp. Br. 3; Chrysler Supp. Br. 4.) "A 'trade secret may consist of any formula,
26 pattern, device or compilation of information which is used in one's business, and which
27 gives him an opportunity to obtain an advantage over competitors who do not know or
28 use it.'" *In re Elec. Arts*, 298 F. App'x 568, 569 (quoting Restatement of Torts § 757, cmt. b);

*see also Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (adopting the Restatement definition of trade secret). Although not precisely the same, the protection of trade secrets is consistent with *Nixon*'s teaching that "business information that might harm a litigant's competitive standing" may not be subject to public inspection. *See Nixon*, 435 U.S. at 598–99. Bearing this limitation in mind, district courts in this Circuit have sealed records containing "information about proprietary business operations, a company's business model or agreements with clients," *Selling Source, LLC v. Red River Ventures, LLC*, No. 2:09-CV-01491-JCM, 2011 WL 1630338, at *6 (D. Nev. Apr. 29, 2011), "internal policies and strategies," *Melaleuca Inc. v. Bartholomew*, No. 4:12-CV-00216-BLW, 2012 WL 5931690, at *3 (D. Idaho Nov. 27, 2012), and "manufacturing information," *Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 463 F. Supp. 2d 1073, 1083 (C.D. Cal. 2006).

Although there may be compelling reasons to keep trade secrets under seal, the court is mindful that not all technical information qualifies as a trade secret. Rather, the economic value of a trade secret "lies in the competitive advantage over others that [a company] enjoys by virtue of its exclusive access to the data, and disclosure or use by others of the data would destroy that competitive edge." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984). Moreover, it is not sufficient for a party wishing to keep records under seal to make generalized allegations of injury from disclosure. Instead, the party seeking to keep a record under seal has the burden "of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Once a party has demonstrated compelling reasons for keeping a document under seal, the court "must then conscientiously balance" that interest against the public's right of access. *Center for Auto Safety*, 809 F.3d at 1097. Bearing these principles in mind, the court turns to the specific records at issue in the instant Motion.

### A. Exhibits Under Seal

At issue in this instant motion are twenty exhibits filed by the parties in connection with the briefing concerning Plaintiff's Motion for Preliminary Injunction.

1  They are Exhibits A, B, C, D, E, F, G, I, J, K, L, M, N, O, P, R, S, and T attached to the
2  Declaration of David Stein and Exhibits E and F attached to the Declaration of David
3  Hughes. Although the unredacted versions of these twenty exhibits remain under seal,
4  Chrysler has recently filed revised redacted versions of these exhibits, which it contends
5  only redacts information that (1) would cause Chrysler "to incur significant and
6  irreparable harm to its competitive standing in the automotive industry" or (2) contains
7  private contact information for individuals listed in the exhibits. (Chrysler Supp. Br. 1.)
8  　　　　Several of the documents Chrysler seeks to keep under seal are design and
9  development documents that are paradigmatic trade secrets. Specifically, Stein Exhibit B
10 contains the engineering performance standard for the TIPM system. The redacted
11 portions detail the various performance requirements for the electrical components used
12 in Chrysler vehicles. There are also specific descriptions of how to construct certain parts
13 and the exact testing requirements that the parts undergo. These documents are the
14 product of Chrysler's economic efforts and public disclosure could allow competitors to
15 build parts with similar specifications and manufacturing processes without investing
16 the same effort into research and development. (Bielenda Decl. ¶ 19.) Likewise, Stein
17 Exhibit M is an engineering notice that describes specific technical modifications to the
18 TIPM systems, as well as new testing regimes. The documents reveal technical challenges
19 encountered in making certain modifications, technical solutions to engineering
20 problems, and valuable information about Chrysler's operational capacity, all of which
21 competitors could use to the detriment of Chrysler's competitive standing. (*Id*. ¶¶ 17-18.)
22 This category also includes Hughes Exhibit E, which is an email referring to an internal
23 part matrix, where only private phone numbers are now redacted and Hughes Exhibit F
24 which is a proprietary list of TIPM components.
25 　　　　A second category of documents Chrysler seeks to keep under seal are
26 engineering documents that reveal Chrysler's testing and analysis protocols. (*Id*. ¶ 20.)
27 These documents all pertain to the investigation into the TIPM failures and Chrysler's
28 efforts to identify the problem and test possible solutions. Specifically, Stein Exhibits A,

C, and E are presentations that detail the investigation into the TIPM recall. Stein Exhibit F is a single page graph that charts warranty claims and identifies the average capacity of a TIPM system. Stein Exhibit P is a consumer advocacy transmittal that details analysis of certain TIPM field failures. These exhibits included photographs of automotive parts, which CAS contended were improperly under seal given that they were readily observable by anyone who owned the Chrysler vehicles at issue. In the current iteration of the redacted documents, Chrysler no longer seeks to keep these photographs under seal. Instead, the redactions in question are now applied specifically to proprietary testing data from various tests of the TIPM and methods for analyzing that data. Of course, the fact that information may reflect poorly on a party or may even lead to future litigation is not a reason to keep it under seal. Here, however, the redacted portions of the document go beyond this and are exclusively about sensitive methods for testing certain technical failures and the potential solutions to these problems. (*Id.* ¶¶ 20-22.) The technical specifications and capacity of the TIPM are an element of Chrysler's competitive standing and the technical data pertaining to efforts to understand failures in this system are inextricably intertwined with information about Chrysler's technical capacity. Were the court to unseal these records, competitors could, without expending their own effort, take advantage of Chrysler's hard earned knowledge about what does and does not work when it comes to automotive power management systems.

  Also at issue are a number of intercompany and intracompany emails referencing the above-mentioned TIPM testing and analysis information. In light of the revised redactions, the only portions of the intracompany emails Chrysler seeks to keep under seal are the portions that pertain to specific warranty and technical repair information, which there are compelling reasons to keep under seal. Specifically, Stein Exhibit D contains TIPM performance data and response results, Stein Exhibit G is an email about the optimal test strategy for identifying TIPM failures, Stein Exhibit J and K detail specific technical solutions to address TIPM performance issues, and Stein Exhibit R and T redact the testing protocols described above. As with the intracompany emails Chrysler

seeks to keep under seal, the intercompany emails between Chrysler and its TIPM supplier, contained at Stein Exhibits L, O, and S, contain competitively valuable information about Chrysler's supplier's technical capacities and testing protocols.

Among the documents Chrysler seeks to keep under seal, the court finds that Chrysler has not shown compelling reasons for keeping a portion of Stein Exhibit I redacted. Specifically, on page I-114, the court finds that there is no compelling reason to keep under seal the first redacted paragraph of the email from Andrew Morris to Jason Sekhon sent on 02/24/2011 at 8:28:03 AM. The second paragraph of that email, which addresses technical solutions to the problem, may still be kept under seal. Likewise, there is no compelling reason to keep the third redacted paragraph—a message from Andrew Morris to "Mark"—under seal. Finally, there is no compelling reason to keep the final redaction on page I-114—the first paragraph of the message from Andrew Morris to Jason Sekhon—under seal. The remainder of that email, which is redacted at page I-115, may be kept under seal as it addresses technical solutions.

**B. Briefs, Pleadings, and Declarations Under Seal**

In addition to the above-mentioned exhibits, CAS seeks to unseal the briefs, pleadings, and declarations filed in connection with the preliminary injunction motion contained at Dkts. 53, 54, 56, 57, 65, 66, and 73. Both parties appear to agree that where information was properly redacted from an exhibit, it can also be redacted from the briefs, pleadings, and declarations. (Chrysler Supp. Br. 10; CAS Supp. Response 1.) Accordingly, the court has reviewed these documents to ensure that only information properly kept under seal in the exhibits was redacted from the briefs, pleadings, and declarations. In light of this review, the court makes the following findings:

- Dkt. 53 (Plaintiffs' Notice of Motion): The court concludes that there is no compelling reason for keeping any part of the Notice of Motion under seal. The current redaction excludes a sentence from the motion that describes Plaintiffs' theory of the TIPM defect. This is not evidence of a proprietary trade secret but instead a statement of one party's position repeated in various other portions of the brief. Although the court recognizes that there is the possibility that, taken out of context, the sentence in question might be construed as a "libelous

8

statement," given that the case has been fully litigated by this point, the risk of misrepresentation is low.

- Dkt. 54 (Plaintiffs' Brief in Support of Motion for Preliminary Injunction): The redactions are appropriately limited to properly redacted exhibits. However, the court finds no compelling reason to redact the argument headings, either in the table of contents or in the actual brief, or to redact any citations to exhibits, given that these exhibits have since been identified.

- Dkt. 56 (Proposed Order re: Motion for Preliminary Injunction): The redactions are appropriately limited to properly redacted exhibits.

- Dkt. 57 (Stein Declaration Exhibit List): The court finds that that there are compelling reasons for keeping the sensitive internal case numbers and details identified in this Exhibit List under seal. The substance of what these exhibits contain have since been disclosed by Chrysler. (*See* Bielenda Decl.)

- Dkt. 65 (Bielenda Declaration): The redactions are properly applied to sensitive manufacturing techniques that are Chrysler trade secrets and could affect Chrysler's competitive standing if disclosed.

- Dkt. 66 (Chrysler's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction): The redactions are appropriately limited to properly redacted exhibits. However, the court finds no compelling reason to redact the text at page 5:4-10, as it quotes text which the court concluded should be unsealed at Dkt. 53. As with, Dkt. 54, the court finds no compelling reason to redact citations to exhibits, given that these exhibits have since been identified.

- Dkt. 73 (Plaintiffs' Reply Brief in Support of Preliminary Injunction): The redactions are appropriately limited to properly redacted exhibits. As with, Dkt. 54 and Dkt. 66, the court finds no compelling reason to redact citations to exhibits, given that these exhibits have since been identified.

**C. Intervention**

In addition to the Motion to Unseal, CAS previously filed a Motion to Intervene solely for the purpose of unsealing the documents in question. (Dkt. 105 at 4.) Given the court's prior determination that the Motion to Unseal should be denied, the court also denied the Motion to Intervene. Accordingly, when the Ninth Circuit vacated the order as to the Motion to Unseal, it also vacated the order as to the Motion to Intervene. *Center for Auto Safety*, 809 F.3d at 1095 n.3. In light of the court's revised conclusion regarding the Motion to Unseal, the court readopts its decision to deny the Motion to Intervene and finds that CAS has not met the requirements for intervention.

In the supplemental briefing, CAS argues that it should be allowed to intervene for purposes of reviewing the sealed documents in order to more fully make its case for unsealing. As Chrysler correctly notes, courts routinely decide motions to unseal brought

by intervenors without first unsealing the documents at issue. *See, e.g.*, *United States v. Benzer*, 2015 WL 4724092, at *1 (D. Nev. 2015). CAS has been given adequate opportunity to present its arguments and the court has undertaken a thorough review to ensure that the revised redactions apply only to the narrow category of sensitive trade secrets and personal contact information, which there are compelling reasons to keep under seal when balanced against the public's right of access.

**IV.     CONCLUSION**

For the reasons stated above, the court GRANTS IN PART CAS's Motion to Unseal. The court hereby ORDERS Chrysler to refile Exhibit I removing the redactions at page I-114, which the court found did not satisfy the compelling reasons standard. Chrysler is further ORDERED to refile the documents at Dkts. 53, 54, 66, 73 removing the redactions the court determined do not meet the compelling reasons standard.

**IT IS SO ORDERED.**

Dated: January 30, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE